■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LARRY FAY, Appellant. — Judgment, Supreme Court, New York County (Kleiman, J.), rendered October 22, 1979, convicting defendant, after a jury trial, of criminal possession of a weapon in the third degree and sentencing him to a term of imprisonment of nine months, affirmed. In colloquy at the trial's inception, out of the jury's presence, concerning the defense strategy to the effect that the gun was planted on defendant because there was a weak robbery case, defense counsel, while acknowledging that the fact of defendant's arrest for robbery (which charge was later dismissed) would come before the jury, argued that this "does not open the door to all aspects of the robbery". The trial court was of the view that testimony concerning the robbery was admissible so that the jury would not speculate as to why the police stopped defendant and his companion. The jury returned and the People called as their first witness, Officer Sheehan. He was asked if he responded to a police radio call at approximately 4:30 A.M. on December 3, 1978, regarding a robbery. No objection was made and the witness responded affirmatively. Next the prosecutor inquired as to whether there was a description of the perpetrator or perpetrators. Defense counsel for the first time objected. The trial court overruled the objection and in clear, unequivocal and commonsense language instructed the jury that the robbery testimony was being admitted as background information to help them understand "the picture", that it was not admitted as proof of the facts concerning the robbery, that defendant was not accused of the robbery, that no inference was to be drawn against defendant concerning the robbery and that the jury might "draw a favorable inference, as far as the defendant is concerned, by reason of the fact he is not being charged with the crime of robbery". At the trial's conclusion the court delivered an able and articulate charge admonishing the jury that the defendant was not on trial for robbery. "[E]vidence of uncharged crimes or of unrelated immoral behavior is inadmissible if offered solely to raise an inference that the defendant is of a criminal disposition and is therefore likely to have committed the crime charged * * * However, such evidence may be admitted as background if it is relevant to establish or explain some material fact * * * The extent ·to which such evidence may be received is a matter lying largely within the discretion of the trial court which must carefully weigh its probative value against the danger that it will unduly prejudice the defendant. Whether there was an abuse of the trial court's discretion will necessarily depend upon the circumstances of the particular case" *(People v Le Grand, 76 AD2d 706, 708-709)*. In light of defendant's "plant" defense, the interrelationship between the motives of the police in stopping defendant and the prior robbery, and having due regard for the trial court's initial instructions to the jury at the beginning of the trial and in his charge at the end of the trial relevant to the robbery testimony, it is clear that

defendant was not deprived of a fair trial. Regarding the trial court's able and clear instructions to the jury, there is, of course, no presumption or inference that the jury is composed of unreasonable people or people who would cavalierly disregard such admonitions in the discharge of their function. Trial by jury is an integral part of our system of justice. We must give credit to the common sense and reason of our fellow man who sits as a juror in fulfillment of the responsibilities which our system of justice bestows on him. As final observations, it is noted that both the prosecution and the defense were in complete agreement at the beginning of trial that the fact of the robbery and the eventual dismissal of that charge were to be brought before the jury. The inextricable relationship between the robbery and the subsequent police conduct in stopping defendant at about 4:35 A.M. in the vicinity of 135th Street and Lenox Avenue, coupled with pragmatic considerations of how to effectively try the defendant on the ensuing gun charge prompts acknowledgment that the reality of the complete "picture" would have to be conveyed to the jury under appropriate guidance from the trial court. To do otherwise under the circumstances herein would result in conveying to the jury a partial "picture" which, in its lack of particulars, might well place the People at a disadvantage in that the jury would speculate in "filling in" the picture to conform with their commonsense perception of reality when confronted by the defendant's claim that the gun was "planted." The full "picture" of the robbery was clearly not presented solely to raise an inference that the defendant is of a criminal disposition and is therefore likely to have committed the crime. The instructions issued to the jury not only removed any potential prejudice to defendant, but even gave the defendant a generous advantage, in that the jury was told that they might draw an inference favorable to defendant in that he was not charged with the crime of robbery. Concur — Kupferman, Sullivan and Lupiano, JJ.

Murphy, P. J., and Carro, J., dissent in a memorandum by Carro, J., as follows: I would reverse and remand for a new trial. Two men committed a gunpoint robbery of a subway token booth located at 135th Street and Lenox Avenue, at about 4:15 A.M. A "robbery in progress" radio report, including a description of the perpetrators, was broadcast. Two officers drove to the subway station and interviewed the token booth clerk. They returned to their radio car to search for the perpetrators and broadcast a revised description. Near the intersection of 140th Street and Lenox Avenue, they saw two young men who fit the general description they had just received. As the two men entered a "gypsy" cab, the officers radioed the central dispatcher and then pulled the cab over. They exited the police car with guns drawn, went to the rear door of the cab and ordered the suspects out. Defendant, who fit the description of one of the perpetrators, got out of the cab. One of the officers started to search him and found a gun in his waistband. Ultimately, the victim was unable to identify defendant as the perpetrator, but he was charged, in a one-count indictment, with possession of a weapon in the third degree. The defendant's contention was that the weapon was "planted" on him by the police. His counsel requested a pretrial ruling, limiting the introduction of evidence concerning the robbery to the fact that he had been arrested for a robbery and that the case was later dismissed. She specifically noted that the most prejudicial aspect of the evidence would be the description of the perpetrators. The prosecutor argued that the defense theory opened the door to evidence of all aspects of the robbery and the police investigation. The court ruled that the People were not to go into anything beyond the point of the seizure of the defendant and the finding of the gun. Later, it would make a further ruling as to the extent to which the defense "opened up the doors as to anything and everything else." The court later permitted almost unrestricted

full and repetitive testimony concerning the robbery and the perpetrators. It, however, instructed the jury that defendant was not on trial for robbery, that the evidence adduced at trial was not evidence that the defendant had committed the robbery and that "you may draw the inference that this defendant had nothing to do with that crime in the token booth." The Assistant District Attorney, in his opening statement, repeated the descriptions of the robbers received by the police and the similar description of the defendant at the time of his apprehension. He then elicited, from each of the three police officers who testified, the two descriptions of the perpetrators of the robbery which had been broadcast over the radio, as well as the similar descriptions of the defendant at the time of his arrest. The defendant called the victim as his witness for the limited purpose of establishing that the police did not show him a gun when they brought the defendant and the other suspect to the token booth and of describing the gun used in the robbery, which was different from the gun taken from defendant. The prosecutor was then permitted, over objection, to take the victim through a lengthy and detailed account of what occurred during the robbery, including descriptions of the perpetrators, and a depiction of the shorter perpetrator (who resembled the defendant) firing a shot at the victim. The prosecutor, in summation, repeated the descriptions sent over the radio and pointed out how well they matched the description of the defendant at the time of his arrest. Thus, he again emphasized the weight of the testimony concerning the robbery and its perpetrators, in a case in which the indictment contained but one count, charging possession of a weapon. The basic rule governing the use of evidence of uncharged crimes is that such evidence is inadmissible if offered for no purpose other than to raise an inference that a defendant is of a criminal disposition (or that he committed the uncharged crime) and, therefore, is likely to have committed the offense being charged. The rule governing the admissibility of uncharged crime represents a balance between the probative value of such proof and the danger of prejudice which it represents to an accused (*People v McKinney,* 24 NY2d 180; *People v Schwartzman,* 24 NY2d 241; see, also, *People v Molineux,* 168 NY 264, 291-294). Obviously, the testimony complained of here could radically have altered the jury's conception of the case and of the defendant's culpability. The prejudice to the defendant clearly outweighed the probative value of the evidence (see *People v Montanez,* 41 NY2d 53, 58; *People v McKinney, supra;* see, also, *People v Vails,* 43 NY2d 364, 368-369). The defendant was not indicted for robbery, nor was he on trial for the commission of that crime. The only question for consideration by the jury should have been whether or not he possessed a weapon at the time he was stopped by the police officers. The robbery was sufficiently separate and apart from the possessory crime so that proof of the one was not required to make out a case as to the other. They were not "inextricably interwoven" (*People v Vails, supra,* p 368). The defense neither questioned the legitimacy of the stop nor raised any identification issue. It would have been sufficient, to avoid confusion and speculation, for the jury to have known only that defendant Fay had been stopped and searched pursuant to an investigation; or even, as requested by defendant, that a robbery had occurred, that Fay had been arrested for it, and that the robbery charge had been dismissed. The strenuous efforts to prove that the police had reasonable grounds to believe the defendant to be one of the perpetrators led to the prejudice of his right to a fair trial. The "plant" defense was insufficient grounds upon which to base the anticipatory flood of evidence of the robbery. That could have been dealt with in rebuttal after the defendant's evidence, had it then been necessary and had there been any danger of the People's case being prejudiced. The record shows an inordinate amount of time spent on proof of the robbery and the description of its perpetrators, as opposed to what

should have been the basically simple trial of possession of a weapon found on the person of the defendant. The disproportionate quantity of evidence comparing the defendant to the description of the perpetrator and linking him to the robbery, and the prosecutor's emphasis in opening and summation to the same end, signaled to the jury that if Fay committed the robbery, he must have possessed the gun and, conversely, if he possessed the gun, he must have committed the robbery. This was so prejudicial that, even at best, the safeguard of the court's admonitions was insufficient to avert the danger of an unfair trial. "Truly prejudicial evidence cannot be erased from a juror's mind by the court's instructions" *(People v Stanard,* 32 NY2d 143, 148). The conviction should be reversed and the matter remanded for a new trial.