■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOSE HERNANDEZ, Appellant.—Judgment, Supreme Court, New York County (Joan Carey, J.), rendered January 8, 1986,

which convicted defendant after jury trial of criminal posses-
sion of a weapon in the third degree and sentenced him to a
prison term of 3 to 6 years, unanimously affirmed.

Defendant was convicted of criminal possession of a weapon
in the third degree arising from his arrest by police officers
who stopped him while driving his girlfriend's car. Before
defendant exited the car, he had quickly leaned forward and
reached down towards the floor of the car. The arresting
officer recovered from the front floor of the car, near the
driver's seat where defendant had reached, a cocked but
unloaded pistol, and two bullets.

Defendant urges that the conviction must be reversed on
the ground that he was deprived of a fair trial when the
People elicited testimony from the complaining witness that
she saw the defendant brandishing a gun "many times" in the
apartment building where they both lived. He claims that this
is reversible error because the prosecutor persisted in repeat-
edly bringing forth this prejudicial testimony, and that he did
so in flagrant violation of a ruling at a pretrial hearing
explicitly precluding the prosecutor from inquiring as to de-
fendant's possession of a weapon prior to the time of the
instant arrest.

A careful review of the record indicates that these asser-
tions are inaccurate, and that the witness' fleeting reference
neither violated any prior court ruling nor prejudiced the
defendant, whose guilt of the crime charged was proved by
overwhelming evidence.

The complaining witness, Linda Arvelo, resided in the same
apartment house as did the defendant, 195 Stanton Street on
the lower east side of Manhattan. Arvelo had complained to
the police many times about defendant's conduct. On October
14, 1984, two days before defendant's arrest, defendant brand-
ished a gun and harassed the complainant. At 5:00 P.M. on
October 16, 1984, Arvelo noticed defendant in the lobby stair-
well carrying a gun. Arvelo notified Police Officer Cuoco, who
happened to be on foot patrol on this block at the time, and
Cuoco, together with several other police officers she had
summoned, entered the building and followed defendant up
the stairs to his second-floor apartment. Before the police
officers could apprehend him, the defendant entered his apart-
ment and locked his door and refused the police requests to
enter the apartment. The police waited about 10 or 15 min-
utes and then left the building. Outside, Arvelo pointed out a
black Pontiac Firebird with a badly dented right front fender
parked on the street. Officer Cuoco radioed a check on the car

and learned that it was not stolen and was registered in the name of a woman (later discovered to be defendant's girlfriend). Fifteen minutes later, Arvelo and Police Officers Cuoco and Scibetta each saw defendant leave the building, enter the Firebird, and drive off.

About 7:00 P.M. that evening, Police Officers Sarno and Scibetta were on patrol on Stanton Street, discussing the events of the day, when defendant drove by in the Firebird and parked it a block away, leaving the headlights on and motor running. As the police officers approached the car, defendant made eye contact with them and quickly leaned forward and reached his arms down toward the floor of the car under the driver's seat. Police Officer Sarno ordered defendant out of the car and frisked him, finding no gun. Meanwhile Police Officer Scibetta looked inside the car and saw the gun and two bullets on the floor near the driver's seat where defendant had just reached down. The officers then arrested the defendant.

Before the trial began, a brief colloquy was held by the attorneys and Justice Carey. Defendant's counsel, who had only recently entered the case, learned that the People planned to call Ms. Arvelo as a witness and offer testimony as to the events of the 14th as well as those of the day of the arrest. As a result of the incident on October 14, a criminal court complaint had been issued, charging defendant with the crime of menacing. Defense counsel argued that defendant would be prejudiced if testimony as to the incident on the 14th was permitted. Counsel also argued that he himself was prejudiced by having only recently learned of the menacing charge because he was only prepared to try what he termed a "simple gun in a car" case.

Justice Carey advised counsel that the People had not withheld this information and that defendant's prior attorney was fully aware of all these relevant facts and should have brought them to the attention of the new counsel. Justice Carey also noted that counsel had been present at a hearing held the day before (which is not transcribed and not part of the record submitted to this court) at which the issue was raised. Justice Carey finally granted the request in part and ruled that the People could not use evidence of the menacing charge:

"No, I'm not letting them put in anything regarding a menacing charge. I mean I'm not allowing that in regarding that he menaced Miss Arvelo with the gun. I'm not allowing

that in. But they also have to prove that he exercised dominion and control over that gun.

"These are relevant tracks, especially when you have the gun in the car; that that is the same gun that he possessed on October 14. And I don't see where he is prejudiced when all of the testimony regarding the fact that he menaced her with the gun or used the gun against her person—when all of that is excluded I don't see where defendant is prejudiced. I don't think you have made out a case for prejudice."

The case then proceeded to trial. The People's police witnesses, Officers Cuoco, Sarno and Scibetta, described in detail the events leading to the defendant's arrest. They were followed by Ms. Arvelo who testified that she lived in the same building as the defendant, saw him with a gun, and reported it to Police Officer Cuoco. The following inquiry ensued:

"Q. (ADA Nolan). How many times had you seen him with the gun?

"A. (Arvelo). Many times, probably ten times.

"Defense Counsel Linzer: Objection, judge.

"The Court: Sustained. Did you see him with the gun that day.

"A. Yes.

"Q. (ADA Nolan). Had you seen him on prior occasions with the gun?

"A. Yes.

"Mr. Linzer. Objection.

"The Court. Sustained. Stricken from the record. The jury is to disregard it."

Assistant District Attorney Nolan then continued the examination by moving on to other relevant topics. Before the cross-examination began, the court instructed the jury: "Now members of the jury just let me give you this instruction. You remember when I made my preliminary remarks I made reference to the fact that a situation may arise wherein a statement is made by a witness that you must, absolutely must, if you are living up to your oath as jurors in this case, you must absolutely strike from your mind. There was some testimony here that the witness saw the defendant or allegedly saw the defendant with a gun on that date and on another occasion other than the one earlier that day, as she described, any testimony regarding that has absolutely no relevance to this proceeding whatsoever, none whatsoever, and you must strike that from your mind. That is not evi-

dence in this case and it cannot be considered by you as evidence in this case."

In a trial that continued over several days and produced over 400 pages of transcript, this brief exchange was the only time when the issue of Arvelo's prior sighting of the gun was ever raised. As is apparent, the reference was very fleeting, an objection was quickly sustained and an explicit and emphatic instruction to disregard the testimony was given to the jury, and, most significantly, no mention was made of defendant's involvement in any other crime, in observance of the pretrial ruling. Thus, even accepting defendant's thesis that the testimony of any prior observation of him with a gun was inadmissible, there is no basis upon which to find reversible error.

We do not, however, agree that Ms. Arvelo's testimony that she had seen defendant with a gun many times on prior occasions constituted impermissible evidence of similar uncharged crimes. The Court of Appeals recently discussed the various facets of this issue in *People v Alvino* (71 NY2d 233, 241) as follows: "Evidence of similar uncharged crimes has probative value, but as a general rule it is excluded for policy reasons because it may induce the jury to base a finding of guilt on collateral matters or to convict a defendant because of his past * * * Therefore, the rule is stated that if the only purpose of the evidence is to show bad character or propensity towards crime, it is not admissible. Evidence of prior uncharged crimes may be received, however, if it helps to establish some element of the crime under consideration or is relevant because of some recognized exception to the general rule." If the probative value of a fact at issue outweighs the possibility for potential prejudice, the evidence is admissible. *(Supra; People v Ventimiglia,* 52 NY2d 350, 359.)

In the instant case, the defendant offered an alibi defense by way of the testimony of his girlfriend, Rosita "Nancy" Colon, who worked in a nearby store on Rivington Street and owned the automobile in which defendant was arrested. Ms. Colon testified that earlier that day while on a break from work, she was walking with her friend Margie Cruz when a man in a schoolyard offered to sell her a gun for $50 and that since she, Colon, had recently been mugged, she decided to buy the gun for her own protection and before returning to work, she went to her parked car and placed the gun on the floor under the driver's seat. She further testified that after work, at about 6:30 P.M., while she was eating in a neighborhood restaurant defendant came by and asked to borrow her car and that she gave him the keys. Ms. Colon maintained that the gun in the

car was hers and that there were no bullets in the gun when she bought it. It was the defense's position that the bullets recovered from the car, which were of the same type as those used in police weapons, were planted.

The prosecutor was aware that Colon planned to testify that the gun was hers. In light of this defense, Arvelo's testimony that she had seen defendant with the gun at a time prior to his entering the car was relevant, if not crucial, in establishing the People's case that it was *defendant's* gun. Since the testimony here had important probative value relating to an important element put into issue by the defense—whether the gun found in the car belonged to the defendant, or to the owner of the car, Colon—it was admissible.

The evidence would also have been admissible, with appropriate limiting instructions, under the exception that permits the introduction of such evidence as background material when necessary to provide a "complete picture" of the events and, as in this case, to prevent speculation, as to why the police stopped the defendant. *(See, e.g., People v Fay,* 85 AD2d 512, *appeal withdrawn* 56 NY2d 593.) Accordingly, since this case presents neither a *Molineux* violation, nor a violation of any express directive by the trial court, the judgment should be affirmed. Concur—Asch, J. P., Rosenberger, Ellerin and Smith, JJ.