THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GARLAND KYSER, Appellant.

Fourth Department, November 18, 1992

APPEARANCES OF COUNSEL

*Linda S. Reynolds,* Buffalo *(David Schopp* of counsel), for appellant.

*Kevin M. Dillon, District Attorney* of Erie County, Buffalo *(J. Michael Marion* of counsel), for respondent.

## OPINION OF THE COURT

DAVIS, J.

Defendant was convicted of two counts of tampering with a witness in the third degree (Penal Law § 215.11 [1], [2]) and one count of bribing a witness (Penal Law § 215.00) involving incidents occurring between June 21 and July 11, 1989. The alleged threats and bribe involved James Wright, a prospective witness in the then pending murder case of *People v Donald Green.* Defendant's principal contention on this appeal is that the trial court committed reversible error when it admitted evidence of four separate violent acts perpetrated against Wright between July 6 and August 29, 1989. Defendant argues that the trial court's admission of that evidence violated the principles enunciated in *People v Ventimiglia* (52 NY2d 350) and *People v Molineux* (168 NY 264). We disagree. We conclude that the holdings of *Ventimiglia, Molineux* and their progeny were not implicated because the violent acts were not ascribed to defendant. Additionally, we conclude that the evidence was properly admitted because it was relevant to show defendant's intent and knowledge and to give meaning to defendant's statements that form the basis of the two counts of tampering with a witness.

I

At trial, James Wright testified that on October 25, 1988, he was delivering food items on Krettner Street in the City of Buffalo, as part of his duties as a custodian of Our Lady of Lourdes Church, when he heard someone scream and observed two men running. Wright chased one of them. The man he chased turned and pointed a gun at him. Although the men escaped in a car, Wright was able to get the license plate number of the car in which they fled. Wright was subsequently shown a police photo array in which he identified Donald Green as the gunman who fled the scene. Green was thereafter indicted and charged with murder.

Further, Wright testified that in June 1989 Lewis Barone, an investigator employed by Green's attorney, visited him at his work regarding Green's case. Wright refused to speak with him about that matter. Within a week, defendant approached Wright at work about Green's case. Defendant, who intro-

duced himself as a neighbor, inquired whether Wright was going to testify in a murder trial. When Wright told defendant that he knew nothing about testifying at the trial, defendant responded that Wright would be testifying against "some really heavy duty people, bad people, you know, * * * people that—that has *[sic]* harmed people or killed people they have not been blamed for". Defendant told Wright that he was speaking about Donald Green's case and told Wright "I see you a lot" and "you be *[sic]* out there with your wife and stuff. You have a nice family. I see your kids out there, your kids out there playing and stuff. How would you like it if somebody was to burn your house down or burn your car up, you know, shoot your kids, or hurt your wife, or hide in the bushes and shoot [you] at work". Defendant asked whether Wright knew what a "ride by" was and told him that it was "when somebody ride *[sic]* by and shoot *[sic]* you". Additionally, defendant told Wright that Wright's brother, who was about to be released from prison, "will never make it out the front door" if Wright testified against Donald Green. Defendant suggested that Wright telephone Green's attorney and change his testimony to indicate either that he did not see anyone or that he had identified Green's now deceased brother as the gunman.

The following day, defendant approached Wright at work and attempted to give Wright $100 in cash to "buy something" or to "pay a bill". When Wright refused to accept the money and told defendant that he would not change his testimony, defendant told him that his wife or children could be harmed. Wright accepted the money when defendant persisted and told defendant that he would telephone Green's attorney but that he was not going to change his testimony.

The trial court permitted Wright to testify, over defense counsel's objection, about four acts of violence perpetrated against Wright in the period between July 6 and August 29, 1989. The court rejected defense counsel's assertion that *Ventimiglia (supra)* was implicated, concluding that the uncharged violent acts were not ascribed to defendant. The court concluded that the evidence was relevant to show defendant's intent and awareness and to give meaning to the words that defendant spoke to Wright.

Wright testified that on July 6, 1989 his car was set afire. Wright telephoned defendant regarding the fire and defendant told him that "they want you to talk to [Green's] lawyer and cooperate with their lawyer". Several days later, a bottle containing a gasoline-soaked cloth was thrown at Wright's

house and Wright discovered scorch marks on his front door. Approximately the same time, Wright observed that his house had been riddled with bullets, one of which entered his son's bedroom. Wright contacted Barone and arranged to meet with him. Wright told Barone that he could not identify Green and that he was intoxicated when he gave his statement to the police. Later that same day, Wright telephoned defendant and told him that he had met with Barone. Defendant responded, "we already know you did" and added "don't worry now". Defendant asked Wright the cost of the damage to his car and his house. Defendant told Wright that they couldn't give Wright money for repairs at that time because "they were being watched".

Finally, Wright testified that on August 29, 1989, while he was driving his car on a city street, two gunshots were fired at him. After that incident, Wright went to the police and told them everything that had occurred.

Several police witnesses called by the People confirmed Wright's testimony regarding the fire damage to his car, the arson attempt at his house and the bullets fired into his house and at his car. The People also offered proof that defendant visited Donald Green at the Erie County Holding Center on June 18 and 25, 1989. Additionally, a former Assistant District Attorney testified that he was in charge of Donald Green's murder case and that Wright was considered a major prosecution witness in that case.

Defendant testified in his own defense. He admitted that he talked to Wright about the Donald Green case. He denied making any threats or bribing Wright in order to convince or compel him to alter his testimony. Instead, defendant contended that he went to see Wright solely as a disinterested party to tell Wright that the rumor around the neighborhood was that Wright was a "snitch". Defendant admitted that he went to see Wright a second time and gave him $100 either to talk to Green's lawyer or to pay bills. Defendant testified that he told Wright that something might happen to him because there were three other murders "behind the case" and there were many people angry with Wright. Defendant denied that he had any involvement in the subsequent violent acts perpetrated against Wright.

## II

It is well established that evidence of a *defendant's*

uncharged criminal or immoral conduct is inadmissible "if it cannot logically be linked to some specific material issue in the case" *(People v Hudy,* 73 NY2d 40, 54-55 [emphasis supplied]; see also, *People v Alvino,* 71 NY2d 233, 241; *People v Ventimiglia, supra).* "The rule excluding evidence of uncharged crimes is based upon the human tendency more readily 'to believe in the guilt of an accused person when it is known or suspected that he has previously committed a similar crime' * * * and is intended to eliminate the danger that a jury may convict to punish the person portrayed by the evidence before them even though not convinced beyond a reasonable doubt of his guilt of the crime of which he is charged" *(People v Ventimiglia, supra,* at 359). Where, as here, a defendant is not accused of having committed the violent, criminal or immoral acts, *Ventimiglia* is not implicated and is not applicable to the determination whether evidence of those acts was properly admitted. Instead, we must turn to the pertinent rules of evidence that are implicated in order to determine whether the challenged evidence was properly admitted.

Evidence is relevant if it has any " 'tendency in reason to prove any material fact' " (Richardson, Evidence § 4 [Prince 10th ed], quoting Uniform Rules of Evidence, rule 1 [2]). Put another way, "evidence is relevant when it logically renders the existence of a material fact more likely or probable than it would be without the evidence" (Richardson, Evidence §§ 4, 5 [Prince 10th ed]). All relevant evidence is admissible unless its admission would violate some exclusionary rule *(see, People v Scarola,* 71 NY2d 769, 777; *People v Lewis,* 69 NY2d 321, 325). Moreover, evidence of events that occurred independent of the crimes charged may be admissible, where necessary, to explain an ambiguous but material fact in the case *(see, People v Green,* 35 NY2d 437, 441-442; *People v Cruz,* 164 AD2d 761, *lv denied* 76 NY2d 985). That is so particularly in cases that "are sufficiently complex that the jury would wander helpless, as in a maze, were the decisive occurrences not placed in some broader, expository context" *(People v Green, supra,* at 441-442). Further, evidence of independent events may be admissible as background to explain or establish some material fact or, when necessary, to provide a "complete picture" of the events *(see, People v Fay,* 85 AD2d 512, *appeal withdrawn* 56 NY2d 593; *see also, People v Hernandez,* 139 AD2d 472, 477, *lv denied* 72 NY2d 957).

Here, the theory of the People's case was that defendant, acting as Donald Green's messenger or agent, threatened to harm Wright or his family in order to compel him either to give false testimony or to absent himself in order to avoid giving testimony in the Donald Green murder trial. In order for the People to prove their case against defendant on the tampering counts, they were required to prove that defendant, knowing that Wright was going to be called as a witness in the *People v Donald Green* murder trial, wrongfully compelled or attempted to compel Wright to avoid testifying or to give false testimony "by means of instilling in him a fear that the actor will cause physical injury to such person or another person" (Penal Law § 215.11 [1], [2]). Given the fact that the particular words used by defendant in his conversations with Wright were subtle, esoteric and made in a circumspect manner, evidence of the four subsequent violent acts perpetrated against Wright was relevant and probative to establish defendant's intent and guilty knowledge regarding the tampering counts and to give meaning to the particular words used. The fact that the particular acts threatened actually did occur in the manner threatened provided proof that defendant's statements were not merely those of a disinterested party passing along neighborhood gossip, but were those of a person who intended to intimidate the witness by instilling fear in him that harm would come to him and his family unless he changed his testimony or agreed not to testify at all. Therefore, we conclude that the trial court properly admitted the evidence of subsequent violent acts perpetrated against Wright.

We reject defendant's contention that he was deprived of a fair trial by prosecutorial misconduct *(see, People v Galloway,* 54 NY2d 396). Additionally, we conclude that defendant's conviction of two counts of tampering with a witness in the third degree is supported by legally sufficient evidence and that the verdict is not against the weight of the evidence *(see, People v Bleakley,* 69 NY2d 490, 495). Finally, the sentence imposed was neither harsh nor excessive.

Accordingly, the judgment of conviction should be affirmed.

BOOMER, J. P., BALIO and FALLON, JJ., concur.

Judgment unanimously affirmed.