[614 NYS2d 726]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MIKE
TILL, Appellant.

First Department, July 28, 1994

**APPEARANCES OF COUNSEL**

*David Samel* for appellant.

*Mark S. DeMarco* of counsel *(Daniel S. Ratner* with him on

the brief; *Robert T. Johnson, District Attorney* of Bronx County, attorney), for respondent.

### OPINION OF THE COURT

SULLIVAN, J.

In the prosecution of this fairly uncomplicated and rather straightforward aggravated gun possession case, the trial court improperly admitted evidence of an uncharged crime, that is, an alleged robbery that preceded the arresting officer's pursuit and apprehension of defendant for the crime of which he was convicted, thereby depriving defendant of his right to a fair trial. Accordingly, the conviction must be reversed and the matter remanded for a new trial.

Insofar as is relevant, the following evidence was adduced at the trial, at which defendant did not testify. On September 10, 1990, at about 12:45 A.M., off-duty New York City Housing Authority Police Officer Hector was driving his automobile across the 149th Street Bridge from Manhattan when he observed two men, later identified as defendant and Edward Chestnut, running across the bridge toward Manhattan. As Hector continued driving, he noticed several persons standing beside a marked police car at the foot of the bridge. Apparently, only moments earlier, two men had nervously flagged down Police Officer Soto and Sergeant Alvarez, who were on routine motor patrol. After a brief conversation, the two men entered the patrol car and the officers proceeded over the bridge after defendant and Chestnut. With this turn of events, Hector made a U-turn and joined Officer Soto and Sergeant Alvarez in pursuit of the two men.

As the patrol car approached the fleeing defendant and Chestnut, Officer Soto exited the vehicle, shouting, "Freeze. Police." Chestnut stopped and was placed under arrest. While Sergeant Alvarez remained on the bridge with Chestnut and called for backup units, Officer Soto resumed the chase of defendant, who was still being pursued by Hector in his automobile. On the Manhattan side of the bridge, at 145th Street and Lenox Avenue, Hector overtook defendant and "cut [him] off". Defendant's immediate response was to point a .357 magnum through the car window. Hector heard a click, but the gun failed to fire. After doing "almost a 360 in [his] car," Hector exited the car, displayed his badge and pulled his own gun. Defendant began to flee. When Hector hollered, "[P]olice, don't move", defendant ignored the directive and continued

his flight. Hector was now joined by Detective Weiner, who, off duty and en route to Manhattan, realized that Hector was a police officer.

After running around the corner, defendant reemerged, pointed his gun at Hector and tried unsuccessfully to shoot him a second time. Defendant ran again, pursued by Hector, who observed him "crouch[ ] down" and throw his gun under a parked car. After a violent struggle, Hector, with the help of Detective Weiner, was able to apprehend defendant. Defendant's .357 magnum, loaded with one .38 caliber bullet, was recovered from behind a parked car.

During the course of the trial, the People, over defendant's objection, were allowed to introduce evidence of the alleged robbery, not charged in the instant indictment, that precipitated the chase of defendant and Chestnut.* Called as a prosecution witness, Chestnut testified that, on the night in question, defendant, an acquaintance, invited him to accompany defendant to the Bronx to "pick up some money" from a friend. The two men walked north on Eighth Avenue and then crossed over the 155th Street Bridge. As they were conversing, defendant suddenly walked away from Chestnut, reached inside his pants and pulled out a .357 magnum. Defendant then approached three Hispanic men and, while holding the gun at his side, went through their pockets. After witnessing this incident, Chestnut decided to leave and proceeded to the 149th Street Bridge where he began a "slow jog" across the bridge. He was stopped by police officers and later, at the precinct, gave a written statement.

With respect to the testimony about the earlier robbery, the court instructed the jury not to consider Chestnut's testimony as evidence of defendant's propensity to commit crimes. Rather, the court told the jury, this evidence was offered solely as background information to explain why the police were chasing defendant. Defense counsel noted his continuing objection to the testimony and moved, unsuccessfully, for a mistrial.

---

* Although defendant's objections at this point were not directed to the uncharged crimes aspect of Chestnut's testimony, as reflected by the court endorsements, defendant opposed the People's pretrial application to introduce evidence of uncharged crimes. In addition, subsequent to Chestnut's testimony, defense counsel voiced a "continuing exception and request for a mistrial relative to the uncharged crimes and bolstering and the similar evidence that was adduced at this proceeding over the defendant's objection." Thus, the issue is preserved.

Originally indicted and charged with the robbery of the three males that allegedly preceded the chase across the 149th Street Bridge, as well as attempted murder and assault for his conduct with respect to Officer Hector, the case proceeded to trial under a subsequently filed superseding indictment which eliminated the robbery charges. The jury acquitted defendant of the attempted murder and attempted assault charges but found him guilty of criminal possession of a weapon in the second degree.

In our view, the overwhelming prejudice flowing from the introduction of the robbery evidence outweighed any probative value it might have. Evidence is relevant if it has any tendency in reason to prove a material fact; unless its admission violates some exclusionary rule, all relevant evidence is admissible. *(People v Lewis,* 69 NY2d 321, 325, citing Richardson, Evidence § 4, at 2 [Prince 10th ed].) "Evidence of similar uncharged crimes has probative value, but as a general rule it is excluded for policy reasons because it may induce the jury to base a finding of guilt on collateral matters or to convict a defendant because of his past [citations omitted]. Therefore, the rule is stated that if the only purpose of the evidence is to show bad character or propensity towards crime, it is not admissible. Evidence of prior uncharged crimes may be received, however, if it helps to establish some element of the crime under consideration or is relevant because of some recognized exception to the general rule [citations omitted]." *(People v Alvino,* 71 NY2d 233, 241.)

In *People v Molineux* (168 NY 264, 293), the Court of Appeals set forth five issues as to the proof of which uncharged crime evidence may be relevant: motive, intent, absence of mistake or accident, identity, and common plan or scheme. The listing of these issues is merely illustrative, not exhaustive. *(People v Jackson,* 39 NY2d 64, 68.) Even if admissible for a recognized purpose, such evidence should be rejected if its potential for prejudice outweighs its probative value. *(People v Hudy,* 73 NY2d 40, 55.) The admissibility of uncharged crime evidence is thus determined by a two-step analysis: first, the identification, as a question of law, of the relevant issue, other than propensity; if this threshold is met the court must then weigh, as a discretionary matter, the probative worth of the evidence against its potential for prejudice. *(Supra.)* In the instant case, the People failed to meet the threshold inquiry. In any event, even if they had, it

was an abuse of discretion to admit the evidence since its prejudice outweighed its probative worth.

The ground upon which the trial court justified the reception of the uncharged robbery evidence—that it served to inform the jury as to why the police had pursued defendant— is, in reality, illusory. Officer Hector, who pursued defendant and whose testimony provided the sole incriminating evidence, testified that he chased defendant because he had observed a police car in apparent pursuit of him. Thus, Hector's motivation was fully demonstrated to the jury and Chestnut's testimony provided no further illumination on that point. Whether Officer Soto and Sergeant Alvarez had reason to pursue defendant and what they had learned from speaking to their passengers, presumably the alleged robbery victims, were so far removed from the narrative as to be immaterial.

The People also argue that the evidence of the uncharged robberies offered a motive for defendant's actions in fleeing and shooting at the pursuing Officer Hector. The plain fact, however, is that his actions were self-evident and required no explanation. The evidence that defendant took out a .357 magnum, pointed and fired it at Hector went unrebutted. The jury needed no explanation as to why defendant fired the gun at Hector. The only issue was whether he did, in fact, point and fire the gun.

Moreover, even if this evidence had some slight probative value to show the basis for the conduct of the police officers who were not directly involved in the attempted shooting of Officer Hector, its prejudice clearly outweighed any legitimate value it might have. If nothing else, this evidence provided the jurors with the comfort of knowing that whatever doubts they might otherwise have, a conviction would be justified by the earlier uncharged conduct. On the other hand, even without this evidence, the jury would have known everything that Hector had known and could have evaluated the case solely on the evidence with respect to the charges submitted for its determination.

Unlike the cases cited by the People, *People v Satiro* (72 NY2d 821 [which allowed evidence of notebook entries in the defendant's handwriting recording cocaine sales to show dominion and control over drugs found in his room, an element of the crime under challenge]) and *People v Ingram* (71 NY2d 474 [which allowed evidence of the defendant's presence with the same accomplice at an uncharged gasoline station robbery

18 days later to rebut his contention that, at the time of the robbery charged, he drove into the station unaware that the accomplice intended to commit robbery]), the uncharged crime evidence here did not establish any element of the crimes charged or rebut any defense theory. As for the dissent's concern that absent evidence of the uncharged crime the jury could speculate that defendant might have mistakenly thought that Officer Hector was one of his attackers, defendant never challenged the actions of Officer Hector or the police officers or contended that they acted improperly in chasing him. Moreover, even after Officer Hector identified himself as a police officer defendant persisted in his attempts to shoot him.

In our view, the only conceivable purpose and effect of this evidence was to demonstrate criminal propensity, a use clearly prohibited. Its admission could not have been harmless.

We have examined defendant's other contentions and find them to be without merit.

Accordingly, the judgment of the Supreme Court, Bronx County (Robert G. Seewald, J., at hearing; Joseph A. Mazur, J., at trial and sentence), rendered June 19, 1992, convicting defendant, after a jury trial, of criminal possession of a weapon in the second degree and sentencing him, as a persistent violent felony offender, to an indeterminate term of imprisonment of from 15 years to life, should be reversed, on the law, and the matter remanded for a new trial.

Tom, J. (dissenting). I respectfully dissent and would affirm the conviction.

As noted by the majority, evidence of prior uncharged crimes can be admitted to show intent, motive, knowledge, a common scheme or plan or identity, although that list is by no means exhaustive *(People v Alvino,* 71 NY2d 233; *People v Molineux,* 168 NY 264; *see generally,* Richardson, Evidence §§ 170-181 [Prince 10th ed]). One such exception is where the evidence is necessary to complete the witness's narrative and to provide a complete, coherent picture of the incident and to place events in the proper context in order to assist the jury in their comprehension of the crime *(People v Montanez,* 41 NY2d 53; *People v Gines,* 36 NY2d 932; *People v Reyes,* 171 AD2d 461, *lv denied* 77 NY2d 999; *People v Mendez,* 165 AD2d 751, *lv denied* 77 NY2d 880; *People v Hernandez,* 139 AD2d 472, *lv denied* 72 NY2d 957).

In the instant action, defendant was indicted and brought to trial on a number of serious crimes (attempted murder, assault and criminal possession of a weapon), all of which stemmed from his initial approach, and alleged robbery, of the three men on the bridge. This incident acted as a catalyst and set in motion a chain of events which eventually involved three different off-duty police officers, one on his way to work, two on their way home from their tours, a number of on-duty police officers, a small mob of people, a chase, a near gun battle, the alleged attempted murder of a police officer, and the eventual arrest of defendant.

The presentation of the foregoing dynamic, convoluted and rather fast-evolving chain of events, starting anywhere but from the beginning, would present less than a clear and coherent picture of events which might confuse and would certainly lead to needless speculation on the part of the jury *(People v Hernandez, supra,* at 477; *People v Fay,* 85 AD2d 512, *appeal withdrawn* 56 NY2d 593).

Further, after Mr. Chestnut's testimony concerning the uncharged robbery, the trial court, *sua sponte,* immediately delivered the following limiting instructions to the jury: "Hold it. I want the jury to understand there is no charge here of anybody taking anything from anybody, it is just here for the narrative and for the continuity of the * * * events that took place that evening, but there is no charge of robbery or the taking of anything from anybody."

At the conclusion of Mr. Chestnut's testimony, the trial court reiterated and expanded on its earlier instruction:

"Ladies and gentlemen of the jury, I have allowed the People to introduce evidence that prior to the incident which is the subject of this indictment, that the defendant possessed a gun and put his hand in the pockets of other individuals.

"I instruct you that the fact that the defendant, that this defendant may have committed this act is no proof whatsoever that he possessed a propensity or disposition to commit the crime charged in this indictment or any other crime.

"It is not offered for such a purpose and must not be considered by you for that purpose.

"Instead, the People offer such evidence solely for the purpose of background information that is to explain why the police were chasing the defendant, and solely as a contention of the prosecution.

"I charge you that such evidence may be considered by you only for such limited purpose and for none other.

"The fact that I allowed you to hear such evidence should not be considered by you that I have any opinion as to the value to prove that purpose. The sufficiency of such evidence to prove the purpose for which it is offered is solely a question for the jury.

"If you find it insufficient and of no value, disregard it, forget it. If you find it sufficiently probative of that purpose you may give it such weight as you believe it deserves."

In view of the clear, cautionary instructions given to the jury on two separate occasions by the Trial Judge, and assuming that the jury is composed of reasonable people capable of following the court's limiting instruction *(People v Barnes,* 180 AD2d 605, *lv denied* 79 NY2d 1046; *People v Fay, supra,* at 513; *see generally, People v Davis,* 58 NY2d 1102), I would conclude that any possible prejudice resulting from Mr. Chestnut's testimony was eliminated *(People v Vega,* 169 AD2d 586).

I would also have found Mr. Chestnut's testimony concerning the alleged robbery admissible to establish defendant's motive to commit the crimes he was charged with, and brought to trial for, which includes motive to avoid punishment for the prior crime *(People v Mees,* 47 NY2d 997, 998; *People v Morse,* 196 NY 306, 310; *People v Cascoigne,* 189 AD2d 714, 715, *lv denied* 81 NY2d 1012; *People v Barnes, supra,* at 605).

In *People v Barnes (supra),* we allowed evidence of the defendant's prior drug-dealing activities to establish his motive in assaulting three women who allegedly sold crack on his behalf and owed him money. In *People v Cascoigne (supra),* we allowed evidence of defendant's prior drug-dealing activities to demonstrate his motive in assaulting complainant, who allegedly wanted to bar defendant from his building. Herein, it seems to follow the same logical progression to allow testimony concerning the uncharged robbery in way of explanation as to why defendant fled from the police, attempted to shoot Officer Hector, and put up a violent struggle when the officers eventually caught him. The testimony was, therefore, admissible to show motive and to enhance the jury's understanding of the crimes *(People v Jones,* 173 AD2d 331, *lv denied* 78 NY2d 1012; *People v Garcia,* 173 AD2d 399, *lv denied* 78 NY2d 1011; *People v Powell,* 157 AD2d 524, *lv denied* 75 NY2d 923).

Absent knowledge of the uncharged crime, the jury in this case could speculate that defendant was just attacked or maybe robbed and was fleeing when he mistakenly thought Officer Hector was one of the attackers. At the time of the chase, Officer Hector was off duty, wearing civilian clothing and driving an unmarked vehicle. This would in effect deprive the People of an opportunity to establish a motive for the crimes charged against defendant and permit the jury to speculate on a motive.

Lastly, in view of the overwhelming evidence of guilt presented against defendant, I would view any error regarding the admission of testimony of the uncharged crime as harmless *(People v Cook,* 42 NY2d 204; *People v Crimmins,* 36 NY2d 230; *People v Jones,* 182 AD2d 708, *lv denied* 80 NY2d 905; *People v Egan,* 103 AD2d 940).

MURPHY, P. J., ROSENBERGER and ASCH, JJ., concur with SULLIVAN, J.; TOM, J., dissents in a separate opinion.

Judgment, Supreme Court, Bronx County, rendered June 19, 1992, reversed, on the law, and the matter remanded for a new trial.