# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

256

KA 11-02497

PRESENT: SMITH, J.P., CENTRA, SCONIERS, AND VALENTINO, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                        MEMORANDUM AND ORDER

RONALD LARKINS, DEFENDANT-APPELLANT.

---

FRANK H. HISCOCK LEGAL AID SOCIETY, SYRACUSE (CHRISTINE M. COOK OF COUNSEL), FOR DEFENDANT-APPELLANT.

RONALD LARKINS, DEFENDANT-APPELLANT PRO SE.

WILLIAM J. FITZPATRICK, DISTRICT ATTORNEY, SYRACUSE (JAMES P. MAXWELL OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Onondaga County Court (Anthony F. Aloi, J.), rendered December 2, 2011. The judgment convicted defendant, upon a jury verdict, of attempted robbery in the first degree.

It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.

Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of attempted robbery in the first degree (Penal Law §§ 110.00, 160.15 [4]) in connection with his attempt to rob a Ramada Inn in DeWitt, Onondaga County (hereafter, DeWitt attempted robbery), at approximately 12:25 p.m. on August 24, 2010. The evidence at trial included a video recording made by the hotel's security system, in which defendant can clearly be seen entering the building, speaking with the hotel desk clerk, drawing a weapon and pointing it over the counter at the clerk, but then immediately fleeing the building after the clerk ducked and ran from the counter. The video recording shows that defendant wore aviator-style sunglasses, a black shirt or jacket, and a blue necktie. A witness also testified that a man fitting defendant's description and wearing a T-shirt or tank top ran from the vicinity of the Ramada Inn immediately after the DeWitt attempted robbery and then left the area in a brown- or rust-colored Toyota or Lexus.

Members of the New York State Police testified that they stopped defendant on the New York State Thruway approximately 90 minutes after the DeWitt attempted robbery, after Thruway toll collectors at an exit near Weedsport indicated that a brown Toyota or Lexus, generally matching the description of the getaway car, had just entered the

Thruway.  The police took defendant into custody and found $225 in his pocket.  In the vehicle, they also found a necktie, a handgun, and a pair of sunglasses matching those used by the perpetrator in the DeWitt attempted robbery.  At the time of the stop, defendant was wearing, inter alia, a green dress shirt on top of a red T-shirt.

Defendant was also charged, in a separate indictment in Cayuga County, with the robbery of a Best Western hotel in Weedsport (hereafter, Weedsport robbery), which occurred approximately an hour after, but prior to defendant's arrest on, the DeWitt attempted robbery.  Pursuant to a *Molineux* ruling (*see People v Molineux*, 168 NY 264, 293), the front desk clerk from the hotel in the Weedsport robbery testified, during the trial of the DeWitt attempted robbery that is before us on this appeal, that she was robbed at gunpoint by a man wearing a green shirt.  She further testified that the perpetrator took approximately $200, although she was not certain of the exact amount taken.  Pursuant to County Court's *Molineux* ruling, that witness was not permitted to identify defendant as the perpetrator of the Weedsport robbery.

Defendant contends that he was deprived of a fair trial by the court's *Molineux* ruling.  In determining that the evidence would be admitted, the court concluded, among other things, that the evidence was "relevant and material to . . . the issue[s] of intent" and identification, and "inextricably interwoven" with the evidence of the charge of attempted robbery being tried.  The court also gave limiting instructions regarding the proper use of the *Molineux* evidence by the jury, which defendant does not challenge on appeal.  We conclude that the court's *Molineux* ruling was not an abuse of discretion (*see generally People v Duperroy*, 88 AD3d 606, 607, *lv denied* 18 NY3d 957; *People v Galloway*, 61 AD3d 520, 520-521, *lv denied* 12 NY3d 915).

"It is fundamental that evidence of uncharged crimes is not admissible if the sole purpose is to show that the defendant was predisposed to commit the crime charged . . . On the other hand, evidence relevant to prove some fact in the case, other than the defendant's criminal propensity, is not rendered inadmissible simply because it may also reveal that the defendant has committed other crimes" (*People v Allweiss*, 48 NY2d 40, 46-47).  Pursuant to the rule in *Molineux* (168 NY at 293), "evidence of uncharged crimes may be relevant to show (1) intent, (2) motive, (3) knowledge, (4) common scheme or plan, or (5) identity of the defendant" (*People v Alvino*, 71 NY2d 233, 242).  "As a corollary, such evidence may be allowed when, as here, it . . . is found to be needed as background material or to complete the narrative of the episode" (*People v Till*, 87 NY2d 835, 837 [internal quotation marks omitted]).

Here, the court concluded that the *Molineux* evidence was admissible to establish defendant's intent, identity, and motive, and to complete the narrative of the events.  Initially, we agree with defendant that such evidence was not properly admitted on the issue of identity inasmuch as defendant's identity as the perpetrator of the attempted robbery was " '*conclusively* established' " by the clear video recording from the hotel's security system (*People v Robinson*,

68 NY2d 541, 548).

     We conclude, however, that the court properly admitted the
*Molineux* evidence pursuant to the remaining grounds upon which it
relied, i.e., to establish defendant's intent and motive, and to
complete the narrative, with respect to the crime herein.  Along with
the other elements of the crime herein, the People were required to
prove beyond a reasonable doubt that defendant intended to steal
property (*see* Penal Law § 160.15; *People v De Jesus*, 123 AD2d 563,
564, *lv denied* 69 NY2d 745; *see generally People v Starks*, 46 AD3d
1426, 1427, *lv denied* 10 NY3d 817; *People v Osinowo*, 28 AD3d 1011,
1012-1013, *lv denied* 7 NY3d 792).  Contrary to defendant's contention,
the court properly admitted evidence that defendant stole property
during the Weedsport robbery as evidence that he intended to steal
property during the crime herein.  It has long been settled that the
*Molineux* rule contains an "exception thereto[] that permits such
evidence when 'the transactions in respect to which evidence was given
were all intimately connected in point of time, place[,] and
circumstance with that for which the accused was indicted, so that
they formed a continuous series of transactions, each throwing light
upon the other, upon the question of knowledge, intent, and motive' "
(*People v Friedman*, 149 App Div 873, 875).  Here, the jury could
conclude, based upon the evidence that the Weedsport robbery occurred
shortly after the DeWitt attempted robbery, that defendant was engaged
in "a continuous series of transactions" (*id.*), pursuant to which he
first attempted to rob the hotel in DeWitt and, having failed to
obtain money during that crime, continued his criminal efforts until
he was successful in the Weedsport robbery.  Furthermore, the
"probative and explanatory value [of the *Molineux* evidence] clearly
outweighed the potential prejudice to defendant, particularly since
the later incident can readily be viewed as a continuation of the"
crime herein (*People v Tarver*, 2 AD3d 968, 969).  Thus, the evidence
that defendant committed another robbery a short time after this
unsuccessful attempt was admissible to show his intent and motive to
commit this crime (*see generally People v Burnell*, 89 AD3d 1118, 1120-
1121, *lv denied* 18 NY3d 922).

     The court also properly admitted the *Molineux* evidence to
complete the narrative of the crime herein and to provide necessary
background information for it.  Absent the *Molineux* evidence, the jury
would have been left to speculate why defendant was stopped on the
Thruway about five exits away from the scene of the crime herein and
over an hour later, in a vaguely described vehicle, wearing different
clothing than either the clerk or the witness described defendant as
wearing, and possessing $225 in cash.  Thus, the *Molineux* evidence was
properly admitted to explain the reason for the stop (*see People v
Radoncic*, 259 AD2d 428, 428, *lv denied* 93 NY2d 1005; *People v
Hernandez*, 139 AD2d 472, 477, *lv denied* 72 NY2d 957), and to "provide
background information as to how and why the police pursued and
confronted defendant" (*People v Tosca*, 98 NY2d 660, 661; *cf. People v
Resek*, 3 NY3d 385, 388-390; *see generally Till*, 87 NY2d at 836-837).
In addition, the evidence of the Weedsport robbery occurring between
the time of the crime herein and the time of the Thruway stop of

defendant, coupled with the additional clothing items found in his car, explained how defendant was arrested in a different shirt than the one he wore during the crime herein, "provided a complete and coherent narrative of the events leading to defendant's arrest" (*People v Antegua*, 7 AD3d 466, 467, *lv denied* 3 NY3d 670; *see People v Buchanan*, 95 AD3d 1433, 1436, *lv denied* 22 NY3d 1029), and was "inextricably interwoven with directly related material in the sense that it is explanatory of the acts done" in the crime charged in the indictment (*People v Johnson*, 149 AD2d 930, 931, *lv denied* 73 NY2d 1017 [internal quotation marks omitted]; *see People v Ely*, 68 NY2d 520, 529; *People v Ventimiglia*, 52 NY2d 350, 361; *People v Williams*, 28 AD3d 1005, 1008, *lv denied* 7 NY3d 819).

Furthermore, defense counsel argued at trial that the evidence, most notably the video recording, demonstrated that defendant committed only the crime of menacing.  Therefore, especially after "[c]onsidering the defense position that defendant [did not intend to steal property, we conclude that] the *Molineux* evidence fell within recognized exceptions and its probative value to the People's case outweighed its prejudice to defendant" (*People v Smith*, 63 AD3d 1301, 1303, *lv denied* 13 NY3d 862; *see People v Bradford*, 118 AD3d 1254, 1256, *lv denied* 24 NY3d 1082; *People v Brown*, 57 AD3d 1461, 1463, *lv denied* 12 NY3d 814, *reconsideration denied* 12 NY3d 923).  Thus, "[w]e cannot say that the trial court abused its discretion when it allowed . . . evidence of [subsequent] conduct relating to [the crime herein] and gave proper limiting instructions to the jury" (*People v Dorm*, 12 NY3d 16, 19).

We reject defendant's contention that the court erred in denying his requests for substitution of his second assigned counsel.  It is well settled that a court must carefully evaluate serious complaints about counsel, and "should substitute counsel when a defendant can demonstrate 'good cause' " therefor (*People v Linares*, 2 NY3d 507, 510).  Defendant's requests to replace the second assigned counsel were based on counsel's alleged failure to file certain motions and on frequent disagreements with defendant.  We conclude that, "[a]t most, defendant's allegations evinced disagreements with counsel over strategy . . . , which were not sufficient grounds for substitution" (*People v Agard*, 107 AD3d 613, 613, *lv denied* 21 NY3d 1039; *see Linares*, 2 NY3d at 511).  Contrary to his further contention, "the court made a sufficient inquiry into defendant's complaints concerning the alleged lack of communication between defendant and defense counsel.  The court 'repeatedly allowed defendant to air his concerns about defense counsel, and after listening to them reasonably concluded that defendant's vague and generic objections had no merit or substance' " (*People v Reese*, 23 AD3d 1034, 1035, *lv denied* 6 NY3d 779, quoting *Linares*, 2 NY3d at 511), and thus defendant's objections were insufficient to demonstrate " 'good cause' " for substitution of counsel (*Linares*, 2 NY3d at 510).  To the extent that there was a hostile relationship between defendant and counsel, we conclude that defendant was the source of that hostility, and that such hostility was "unjustified . . . and . . . did not require substitution" (*People v Walton*, 14 AD3d 419, 420, *lv denied* 5 NY3d 796).

Contrary to defendant's further contention, the court did not abuse its discretion in denying his request to proceed pro se. Defendant's request to represent himself was not clear and unequivocal.  Rather, his request was made in the alternative to his frequent and unsupported requests for substitution of assigned counsel.  Thus, the court did not abuse its discretion in denying those requests (*see People v Wilson*, 112 AD3d 1317, 1318, *lv denied* 23 NY3d 1069; *cf. People v Slaughter*, 78 NY2d 485, 491-492; *see generally Matter of Kathleen K. [Steven K.]*, 17 NY3d 380, 384-385).

Contrary to defendant's further contention, the evidence viewed in the light most favorable to the prosecution is legally sufficient to support the conviction (*see People v Bleakley*, 69 NY2d 490, 495; *People v Foster*, 64 NY2d 1144, 1146, *cert denied* 474 US 857; *People v Contes*, 60 NY2d 620, 621).  Furthermore, viewing the evidence in light of the elements of the crime as charged to the jury (*see People v Danielson*, 9 NY3d 342, 349), we reject defendant's further contention that the verdict is against the weight of the evidence (*see generally Bleakley*, 69 NY2d at 495).

Defendant failed to preserve for our review his contention that the prosecutor's stated reasons for striking a prospective juror in response to a *Batson* challenge were pretextual, inasmuch as he "failed to articulate [to the court] any reason why he believed that the prosecutor's explanations were pretextual" (*People v Santiago*, 272 AD2d 418, 418, *lv denied* 95 NY2d 907; *see People v Smocum*, 99 NY2d 418, 423-424).  In any event, that contention lacks merit.  "The court was in the best position to observe the demeanor of the prospective juror[] and the prosecutor, and its determination that the prosecutor's reasons for exercising peremptory challenges with respect to [the] . . . prospective juror[] were race-neutral and not pretextual is entitled to great deference" (*People v Williams*, 13 AD3d 1214, 1215, *lv denied* 4 NY3d 857; *see People v Carter*, 38 AD3d 1256, 1256-1257, *lv denied* 8 NY3d 982).

Defendant failed to preserve for our review his additional contention that he was penalized for rejecting a plea offer and exercising his right to a jury trial (*see People v Stubinger*, 87 AD3d 1316, 1317, *lv denied* 18 NY3d 862; *People v Griffin*, 48 AD3d 1233, 1236-1237, *lv denied* 10 NY3d 840).  In any event, that contention is without merit (*see Stubinger*, 87 AD3d at 1317), and the sentence is not unduly harsh or severe.  We have reviewed defendant's remaining contentions in his main and pro se supplemental briefs and conclude that none warrant reversal or modification of the judgment.

Entered:  May 8, 2015                    Frances E. Cafarell
                                         Clerk of the Court