OPINION OF THE COURT
Simons, J.
 Defendant has been convicted of committing incest* with his 14-year-old daughter and sentenced to 116 to 4 years in prison. He is now on parole pursuant to that sentence. He contends on appeal that the judgment must be reversed, first, because the People failed to produce sufficient evidence that the victim was his daughter and that he knew she was, and second, because the trial court erroneously permitted the victim to testify to prior uncharged incestuous acts he allegedly committed with her. There is sufficient evidence in the record to support the conviction but there should be a new trial because the testimony of prior uncharged crimes, not relevant to establish any element of the charged crime, was erroneously received.
*324 I
The People introduced testimony by the victim and her mother to establish defendant’s relationship and knowledge and testimony of the victim and her aunt to establish the intercourse.
Joyce Lewis, the victim’s mother, testified that her daughter, Ceciel, was born out of wedlock in Kingston, Jamaica, on March 11, 1968 and that defendant was Ceciel’s father. She stated that during 1967 she had a sexual relationship with defendant, that she had "no other friends and men” during that time and that her last menstrual period before Ceciel’s birth occurred about nine months earlier, in June 1967, when she was seeing defendant. Defendant eventually married Mrs. Lewis, in Jamaica, 10 years later. At the time of the marriage she had three children, Ceciel, who used defendant’s surname, and two others, who did not. Shortly after the marriage, Mrs. Lewis left Ceciel and one other child in Jamaica in defendant’s care and came to New York. In 1979, a year and a half later, defendant brought the children to New York and the family resided together in The Bronx until defendant’s incarceration for this crime. In addition to this evidence of relationship and knowledge, Ceciel was also properly permitted to testify that defendant was her father (see, 2 Wharton’s Criminal Evidence § 273, at 178-179 [Torcía 14th ed]; Richardson, Evidence § 329, at 299-300 [Prince 10th ed]; cf., Ferro v Bersani, 78 AD2d 1010, affd 59 NY2d 899).
Ceciel also testified to intercourse with her father and this evidence was corroborated by defendant’s admissions to her aunt.
Viewed in the light most favorable to the People (People v Contes, 60 NY2d 620, 621), this evidence was sufficient to support the jury’s finding that defendant was the victim’s father and that, knowing he was, he had sexual intercourse with her.
II
The evidence of uncharged crimes was received when Ceciel, after describing the act charged in the indictment, testified that on more than 10 prior occasions, her father had overpowered her and forced her to engage in sexual intercourse. She explained that although she had resisted some of defendant’s previous sexual advances she no longer did by the time of the *325 incident charged in the indictment because she had grown "used to” his behavior. Receipt of this evidence is assigned as error.
All relevant evidence is admissible unless its admission violates some exclusionary rule (Ando v Woodberry, 8 NY2d 165, 167). Evidence is relevant if it has any " 'tendency in reason to prove any material fact’ ” (see, Richardson, Evidence § 4, at 2, op. cit., quoting Uniform Rules of Evidence, rule 1 [2]). Evidence of a defendant’s prior uncharged crimes may have some probative value; indeed, Wigmore contends that such evidence is objectionable because juries attribute too much significance to it (1 Wigmore, Evidence § 194, at 646 [3d ed]). For that reason it is usually excluded because it may (1) require defendant to meet a charge of which he had no notice; (2) raise collateral issues and direct the attention of the jury away from the crime charged; or (3) result in the proof of the prior offenses being taken by the jury as justifying a condemnation of the defendant irrespective of his guilt of the offenses charged (see generally, People v Robinson, 68 NY2d 541, 547; People v Ventimiglia, 52 NY2d 350, 359-360; People v Allweiss, 48 NY2d 40, 46-47). The general rule is that evidence of prior uncharged crimes may not be offered to show defendant’s bad character or his propensity towards crime but may be admitted only if the acts help establish some element of the crime under consideration or are relevant because of some recognized exception to the general rule (People v Beam, 57 NY2d 241, 250; People v Allweiss, supra; People v Carmack, 44 NY2d 706, affg 52 AD2d 264, 265-266, 53 AD2d 1017). In People v Molineux (168 NY 264, 293), we listed some of the matters on which evidence of uncharged crimes may be relevant — for example, to show (1) intent, (2) motive, (3) knowledge, (4) common scheme or plan, or (5) identity of the defendant. Even when admissible for such purposes, however, the evidence may not be received unless its probative value exceeds the potential for prejudice resulting to the defendant (People v Ely, 68 NY2d 520, 529; People v McKinney, 24 NY2d 180, 184). In this case the court permitted the victim’s testimony of prior incestuous acts to prove defendant’s "amorous design”. That ruling constituted reversible error.
Although the "amorous design” exception has been widely accepted (see generally, Annotation, Evidence — Other Sexual Offenses, 167 ALR 565), the courts applying it have not made entirely clear the rationale on which they do so and it has been the subject of considerable criticism (see, e.g., Gregg, *326 Other Acts of Sexual Misbehavior and Perversion as Evidence in Prosecutions for Sexual Offenses, 6 Ariz L Rev 212 [1965]; Slough, Relevancy Unraveled, 6 U Kan L Rev 38, 51-52 [1957]; Note, Evidence of Defendant’s Other Crimes: Admissibility in Minnesota, 37 Minn L Rev 608, 614 [1953]). Apparently the exception "grew up in the context of prosecutions for sexual crimes that were consensual” (Gregg, Other Acts of Sexual Misbehavior and Perversion as Evidence in Prosecutions for Sexual Offenses, op. cit., at 219; see also, People v Bradley, 8 AD2d 982). It was also deemed particularly fitting to receive such evidence in cases where corroboration of the victim’s testimony was required by statute and was difficult to obtain because the crime took place in private surroundings (Gregg, op. cit, at 219-220). We recognized the "amorous design” exception in People v Thompson (212 NY 249) because the evidence of uncharged crimes had "a natural tendency to corroborate or supplement” the direct evidence (id., at 251). We also approved the exception, without comment, in People v Fuller (50 NY2d 628).
People v Thompson (supra) involved a prosecution for statutory rape in which the complainant was permitted to testify to other acts of intercourse she committed with the defendant subsequent to the charged crime. Although the court recognized the general rule that such evidence may not be admitted it found no error in defendant’s trial. Going far beyond the facts of the case, the Thompson court stated the broad rule that "in prosecutions for adultery, seduction, statutory rape upon one under the age of consent and incest, acts of sexual intercourse between the parties prior to the offense charged in the indictment may be given in evidence” to prove the act charged (id., at 251-252). In support of this statement, the court relied principally on an English incest case, Director of Pub. Prosecutions v Ball (6 Crim App 31 [1908-1910], All ER Rep 111) but extended the exception applied there well beyond the holding of the case. It also cited two out-of-State statutory rape cases (see, Boyd v State, 81 Ohio St 239, 90 NE 355; State v Schueller, 120 Minn 26, 138 NW 937), which have since been questioned (Note, Evidence of Defendant’s Other Crimes: Admissibility in Minnesota, 37 Minn L Rev 608, 614).
In Ball, a brother and sister who shared the same bedroom and bed were prosecuted for incest. Because the evidence was circumstantial and ambiguous, the court applied the familiar rule that where evidence is subject to an interpretation favoring either innocence or guilt, evidence which rebuts the *327 innocent interpretation is relevant to prove the charged crime. Accordingly, the court found no error in the admission of testimony from third parties that on prior occasions the two defendants had engaged in intercourse and that, in fact, the woman had borne a child as a result of their previous conduct. The evidence of prior uncharged acts of intercourse was relevant to show the mutual disposition of the defendants to engage in incest on the date charged. The situation was similar, the House of Lords noted, to the rule which permits evidence in a divorce case of the opportunity and inclination of a defendant and corespondent to commit adultery to resolve ambiguous circumstantial evidence (see also, Pollock v Pollock, 71 NY 137). The testimony is admissible not to establish the defendant’s attitude toward his victim but to establish the attitude of codefendants toward each other. A leading treatise on New York evidence similarly has stated the exception as one permitting evidence of prior uncharged acts to show mutual disposition (see, Richardson, Evidence, § 182, at 151, op. cit). Our affirmance in People v Johnson (30 NY2d 776, affg 37 AD2d 218, 881) confirms that mutual disposition is the basis for the amorous design exception to the general rule. In that case we affirmed a holding that, notwithstanding the Thompson exception, evidence of uncharged crimes was not relevant in a prosecution for both forcible and statutory rape in which the defendants had not contended that the victims had consented to intercourse.
The reasoning of those decisions requires reversal. Unlike Ball (supra), here the evidence of prior uncharged acts was not necessary to resolve an ambiguity (see also, People v Young, 99 AD2d 373). Nor was the evidence admissible for any of the other reasons generally relied upon for receiving it. Incest requires no specific intent, only the general intention to perform the prohibited act; thus, whether defendant entertained an "amorous design” toward the victim and was predisposed to engage in sexual intercourse with her, or whether the victim consented to sexual intercourse with him, was irrelevant (People v Johnson, supra; People v Bradley, 8 AD2d 982, supra). Furthermore, corroboration of the victim’s testimony was not necessary (see, Penal Law §§ 130.16, 255.30 [2]; People v Facey, 69 NY2d 836, affg 115 AD2d 11; People v Ahlers, 98 AD2d 821) but even if corroboration was required, the testimony did not, in the language of People v Thompson (212 NY 249, 251, supra), "corroborate or supplement” the victim’s testimony in any proper sense. The primary duty of *328 the fact finder in this case was to determine whether the victim’s statements describing the incestuous act charged in the indictment were credible. Her allegations concerning defendant’s prior actions did not render her testimony pertaining to the charged crime more trustworthy because a witness cannot buttress her own testimony by making further unsubstantiated accusations. The victim’s statements regarding the prior uncharged crimes therefore carried no probative weight (see, People v Stanley, 67 Cal 2d 812, 819, 433 P2d 913). Apparently the evidence was offered to explain why Ceciel did not resist her father’s advances, but the presence or absence of resistance was irrelevant to whether defendant committed incest. It could do no more than permit the jury to speculate that if defendant committed incest before, he must have done so again.
We cannot say that the error was harmless. The victim’s testimony was the principal evidence of the crime and, undoubtedly, her cumulation of defendant’s criminal acts seriously prejudiced defendant in the eyes of the jury.
Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.
Chief Judge Wachtler and Judges Kaye, Titone, Hancock, Jr., and Bellacosa concur; Judge Alexander taking no part.
Order reversed, etc.

Penal Law former § 255.25 provided: "A person is guilty of incest when he marries or engages in sexual intercourse with a person whom he knows to be related to him, either legitimately or illegitimately, as an ancestor, descendant, brother or sister of either the whole or the half blood, uncle, aunt, nephew or niece.”