OPINION OF THE COURT
Donald P. DeRiggi, J.
This is a motion in limine by the District Attorney in *248 conjunction with a rape-sodomy-sexual abuse trial beginning against the defendant.
Initially it should be noted that the defendant’s counsel has indicated that he will raise the issue of consent in his opening statement.
The People seek to introduce in their case-in-chief testimony from the complainant and her employer, to the effect that one month before the alleged rape-sodomy-sexual abuse took place, the defendant accosted the complainant, sexually touched her and made a lewd proposal and that, in response thereto, the complainant took certain actions designed to impede the defendant’s access to the store and to herself.
They seek authorization to allow testimony that not only did the complainant orally reject this defendant’s advances but also' that she told her employer to contact the defendant’s employer for the purpose of requesting that the defendant make deliveries at times other than during the hours in which the complainant worked. The People also seek authorization to permit testimony to the effect that two weeks before the charges arose, the complainant asked a customer to remain in the store when the defendant appeared. The complainant also allegedly told her husband and another friend about the defendant’s words and acts and contends that another friend told her that defendant attempted to kiss her.
The District Attorney requests a ruling permitting this testimony, claiming that it is relevant and nonprejudicial and that it reflects the complainant’s state of mind on the issues of consent, forcible compulsion, fear and her relationship with the defendant.
Forcible Compulsion
The District Attorney has offered a series of cases in support of their request to introduce the "state of mind” testimony. These cases deal with the issue of "forcible compulsion” in rape cases and demonstrate that the courts have permitted the People to introduce proof that the defendant had committed past acts of sexual violence and that the complainant’s knowledge thereof reflected on her "state of mind” and the issues of forcible compulsion and consent.
Courts have permitted evidence of prior assaults as relevant to explain the conduct of a victim and to corroborate the testimony of a forcible rape, but, as discovered in People v Johnson (37 AD2d 218, 221 [3d Dept 1971]), proper instructions must be given that the evidence was received for that limited purpose.
*249 Further, evidence of previous incidents in which a defendant sexually molested a complainant have been properly admitted into evidence to show a complainant’s ongoing fear of a defendant and in support of the element of forcible compulsion. (People v Hudy, 73 NY2d 40 [1988]; People v Lewis, 69 NY2d 321 [1987].)
It is well established that evidence otherwise relevant to prove some material fact is not necessarily rendered inadmissible even though it reveals that a defendant has committed another crime. (People v Molineux, 168 NY 264 [1901]; People v Sims, 110 AD2d 214 [2d Dept 1985].) However, the court must balance the probative value of this evidence against its potential prejudice to the defendant. (People v Thompson, 158 AD2d 563 [2d Dept 1990].)
In order for such evidence to be probative, the People must establish a logical link between the evidence of the past assaults by the defendant on the complainant and the material issues of forcible compulsion and lack of consent. (People v Velasquez, 141 AD2d 882 [2d Dept 1988]; People v DeLeon, 135 AD2d 555 [2d Dept 1987].) Once this showing is made, the trial court must then properly weigh the probative value of this evidence against its potential prejudice. (People v Alvino, 71 NY2d 233 [1987].) When this balancing is done, the courts have generally held that the trial courts have not improvidently exercised their discretion by permitting such testimony. (People v Hudy, supra; People v Thompson, 72 NY2d 410 [1988]; People v Lewis, supra; People v Tas, 51 NY2d 915 [1980]; People v Coleman, 42 NY2d 500 [1977]; People v George, 197 AD2d 588 [2d Dept 1993]; People v Velez, 159 AD2d 665 [2d Dept 1990]; People v Ascheim, 118 AD2d 649 [2d Dept 1986].)
The Court of Appeals in People v Yannucci (283 NY 546, 549 [1940]) stated the rule as follows: "It would seem that there is no way jurymen can ever determine whether a woman fails to resist attack because of fear of immediate and great bodily harm, which she has reasonable cause to believe will be inflicted upon her, unless they consider the surrounding circumstances”.
The cases presented by the People are not dispositive of this matter, however, because the testimony sought to be introduced here does not reach the level of intimidation contained in those examples offered in support. The fact that the defendant allegedly touched the complainant’s buttock and made a lewd proposal does not demonstrate that he is a violent person and does not measure up to the type of acts portrayed in the offered *250 cases as being the basis for a justly held concept paralleling the requisite "forcible compulsion”. Rather, the defendant’s acts establish what might be referred to as an "amorous design”. But, significant on the issue of consent is the complainant’s reaction of manifest fear confirmed by her acts to keep the defendant away.
Victim’s State of Mind
Another line of cases contributes further to the analysis at hand. Several of these cases involve homicides. In the relevant portions of these cases, the People sought to introduce testimony that (1) the deceased told the witness that he intended to meet the defendant at a certain place relevant to the People’s case and (2) that he, the deceased, told the witness that he was afraid the defendant was going to kill him. The courts have permitted the first but not the second.
In People v Bernard (214 AD2d 578, 578-579 [2d Dept 1995]), the Court said: "The trial court also did not err in admitting into evidence testimony regarding the deceased victim’s statement on the night of the shooting of his intention to meet someone named 'Mike’. Under the state of mind exception to the hearsay rule, a declarant’s statement that he intends to meet another is admissible 'where the statement is made under circumstances that make it probable that the expressed intent [is] a serious one, and that it [is] realistically likely that such a meeting would in fact take place’ (People v Malizia, 92 AD2d 154, 160, affd 62 NY2d 755, cert denied 469 US 932; see also, People v Bongarzone, 116 AD2d 164, 169-170, affd 69 NY2d 892; United States v Pheaster, 544 F2d 353, cert denied sub nom. Inciso v United States, 429 US 1099). In the present case, the deceased victim’s statement was made under circumstances which made it probable that such a meeting would in fact take place.”
In United States v Brown (490 F2d 758 [DC Cir 1973]), the trial court permitted the complainant’s wife to testify that the complainant told her he was afraid the defendant would kill him. The Circuit Court for the District of Columbia reversed the conviction, concluding that the complainant’s state of mind on the issue of homicide was not relevant and was prejudicial to the defendant, but spoke at length on concepts relevant to our case:
"Briefly stated, the state of mind exception to the hearsay rule allows the admission of extrajudicial statements to show the state of mind of the declarant at that time if that is at is *251 sue in the case * * * It also allows such statements to show a future intent of the declarant to perform an act if the occurrence of that act is at issue. Mutual Life Ins. Co. v. Hillmon, 145 U.S.285, 12 S.Ct 909, 36 L.Ed. 706 (1892).” (Supra, at 762.)
"Quite a number of courts have confronted facts similar to those here involving hearsay statements made by the victim of a homicide which inferentially implicate the defendant. Such statements by the victims often include previous threats made by the defendant towards the victim, narrations of past incidents of violence on the part of the defendant or general verbalizations of fear of the defendant. While such statements are admittedly of some value in presenting to the jury a complete picture of all the facts and circumstances surrounding the homicide, it is generally agreed that their admissibility must be determined by a careful balancing of their probative value against their prejudicial effect. Courts have recognized that such statements are fraught with inherent dangers and require the imposition of rigid limitations. The principal danger is that the jury will consider the victim’s statement of fear as somehow reflecting on defendant’s state of mind rather than the victim’s — i.e., as a true indication of defendant’s intentions, actions, or culpability. Such inferences are highly improper and where there is a strong likelihood that they will be drawn by the jury the danger of injurious prejudice is particularly evident.
"The quantum of prejudice, as stated above, is highest when the circumstantial facts in the statement are intimately related to the issue to be proved. In the context of homicide cases such as this, it is clear that where the improper purpose for which the jury might consider the evidence bears closely on the central question of defendant’s guilt or innocence there is less likelihood that the jury will confine the statement to its proper realm. Here the functional utility of the limiting instruction becomes most doubtful. This is the lesson of the famous case Shepard v. United States, 290 U.S. 96, 54 S.Ct. 22, 78 L.Ed. 196 (1933). There the state of mind testimony which directly accused the defendant was so dispositive of his guilt that the limiting instruction undoubtedly would have been entirely futile * * * [' "Dr. Shepard poisoned me.” 290 U.S. at 98, 54 S.Ct. 22.’]” (Supra, at 765-766, and n 27.)
"The threshold requirement of admissibility of such hearsay statements of fear of defendant in homicide cases is some substantial degree of relevance to a material issue in the case. While there are undoubtedly a number of possible situations *252 in which such statements may be relevant, the courts have developed three rather well-defined categories in which the need for such statements overcomes almost any possible prejudice. The most common of these involves defendant’s claim of self-defense as justification for the killing. When such a defense is asserted, a defendant’s assertion that the deceased first attacked him may be rebutted by the extrajudicial declarations of the victim that he feared the defendant, thus rendering it unlikely that the deceased was in fact the aggressor in the first instance. Second, where defendant seeks to defend on the ground that the deceased committed suicide, evidence that the victim had made statements inconsistent with a suicidal bent are highly relevant. A third situation involves a claim of accidental death, where, for example, defendant’s version of the facts is that the victim picked up defendant’s gun and was accidentally killed while toying with it. In such cases the deceased’s statements of fear as to guns or of defendant himself (showing he would never go near defendant under any circumstances) are relevant in that they tend to rebut this defense. Of course, even in these cases, where the evidence is of a highly prejudicial nature, it has been held that it must be excluded in spite of á significant degree of relevance.” (Supra, at 767.)
"The rule then to be distilled from the better reasoned decisions is that a victim’s extra-judicial declarations of fear of the defendant are admissible under the state of mind exception to the hearsay rule with a limiting instruction only if there is a manifest need for such evidence, i.e., if it is relevant to a material issue in the case. Where there is a substantial likelihood of prejudice to the defendant’s case in the admission of such testimony, it is inadmissible if it bears only a remote or artificial relationship to the legal or factual issues raised in the case. Even where there is substantial relevance, the additional factual matters in the statement may simply be too explosive to be contained by the limiting instruction, in which case exclusion of the testimony is also necessitated * * *
"Close examination reveals that there are in fact two ' "relevances” ’ which must coexist. First, the victim’s state of mind must be relevant to some material issue in the case as, for example, where an issue of self-defense, suicide, or accidental death is raised by defendant. Second, the extrajudicial statement itself must be probative on that question of the victim’s state of mind once it is conceded that this is a valid and relevant inquiry.
"An illustration of a fatal deficiency in this latter element of relevance is the Shepard case itself. In Shepard it was clear *253 that the state of mind of the deceased was relevant to a material issue in the case — the defense of suicide. However, the statement ' "Dr. Shepard poisoned me” ’ is of extremely slight probative value on the deceased’s will to live (or in Justice Cardozo’s words ' "the existence of a vital urge” ’) and is at the same time, of course, immeasurably prejudicial.” (Supra, at 773-774.)
"The defendant here directly placed his identity in issue, and the challenged testimony expressly names him as the probable murderer * * *
"[T]he close proximity of the improper inference to the question of guilt or innocence makes it highly unlikely that the jury sufficiently compartmentalized its consideration of the testimony in abeyance to the limiting instruction ultimately given.” (Supra, at 779.)
Fear-Consent-Relationship
From this authority it is clear that a complainant’s statement, as to his/her state of mind on an issue other than that of the defendant’s guilt, should be given consideration when offered by the prosecution to prove another relevant issue.
In this case, the defendant, according to counsel, will take the stand to testify that he and the complainant had been having sexual intercourse for two months before the alleged crimes were committed.
Therefore, the complainant’s testimony about her state of mind during that time is relevant. Her testimony is not being offered on the issue of the guilt of the defendant or to prove his commission of the acts in question, but is rather offered to show the complainant’s state of mind on the issues of the relationship and subsequent consent.
As in Brown (490 F2d 758, supra), where the court said the victim’s state of mind on the issue of homicide is prejudicial and not relevant but would have been relevant had the issue been self-defense, suicide or accident, similarly here, the complainant’s state of mind on the issue of the relationship between the parties is relevant but not prejudicial. Testimony tending to establish that she feared the defendant during the same time he contends they were having sexual intercourse would not be prejudicial especially since the defendant himself is raising the issue of the nature of that relationship.
Summary
The cases on forcible compulsion conclude that the complainant’s knowledge of the defendant’s past acts of violence weigh *254 on the issues of consent and fear since she has thereby become aware of the danger of physical resistance.
Similarly, in the present case, the complainant’s acts and statements taken in response to the defendant’s amorous designs, wherein she took steps to avoid being alone with the defendant, weigh on the issue of consent since they reflect a state of mind of fear of the defendant.
Other cases permit the introduction of a victim’s statement to a witness that he intended to meet the defendant at a certain time and place relevant to the charges.
These cases have generally been those involving homicide and the necessity factor weighs heavily in analyzing the basis for the rule, since, obviously, the victim is not available to testify. The receipt of this testimony not only serves to show the victim’s intention to meet the defendant but also, by inference, places the defendant at the scene of the crime. While the testimony would not go so far as to establish a "relationship” within its generally understood meaning, it does show an intent to be with someone at a time and place crucial to the case.
In this matter, the victim’s acts and statements differ from those for which precedent exists for the reception thereof, but a similar theme exists between the two. Here the complainant’s expressed state of mind is an intent to avoid the defendant who claims a relationship leading to consensual sex. There the expressed state of mind was to meet with someone who is now accused of homicide.
Cases above cited also permit state of mind utterances on the part of the complainant which have a bearing on such defenses or issues as suicide, accident and self-defense.
The utterances tend to contradict the defendant’s position and would include such statements from a complainant as "I love life”, "I hate guns” and "I fear the defendant” to counter the essence of each type of defense.
In this case the People seek to show the complainant’s state of mind to contradict the amorous relationship claimed by the defendant.
Decision
The complainant and other witnesses for the prosecution will not be permitted to testify that the complainant said she was afraid the defendant would rape her but they will be permitted to testify on matters which reflect upon the issue of consent, fear and the relationship between the parties. *255 Therefore, the testimony of the complainant and her employer, that one month before the alleged rape, she, the complainant, told her employer to keep the defendant out of the store while she, the complainant, was there, and to tell the defendant’s employer the same, is admissible under the "state of mind” concept as is the complainant’s statement to the customer, about two weeks before the alleged rape wherein the complainant requested the customer to remain in the store until the defendant left. The state of mind of the complainant at those prior times is at issue since the defendant is contending that they were having sexual intercourse during this time and since it reflects on the issue of that relationship and consent at the time of the alleged rape. The statements made by the complainant to her husband, the friend and the statement made to her by Ms. Bogashewicz about the defendant allegedly trying to kiss her will not be permitted and they are excluded under the reasoning of United States v Brown (supra).