**Anthony HOLMES, Petitioner,**

v.

**Thomas RICKS, Respondent.**

**No. 00–CV–6523.**

United States District Court,
W.D. New York.

Dec. 20, 2004.

Anthony Holmes, Auburn, NY, pro se.

John R. Trice, Chemung County District Attorney, Elmira, NY, for Defendant.

### DECISION AND ORDER

BIANCHINI, United States Magistrate Judge.

### INTRODUCTION

Anthony Holmes ("Holmes") filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Chemung County Court on one count of attempted second degree murder and one count of second degree criminal possession of a weapon. The parties have consented to disposition of this matter by the undersigned pursuant to 28 U.S.C. § 636(b).

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The conviction at issue in the instant habeas petition arose from the shooting of security guard Quentin Giles ("Giles") at the Arnot Mall in the Town of Big Flats on October 17, 1997. Holmes was arrested in connection with the incident and charged with attempted murder in the second degree and criminal possession of a weapon in the second degree.

Holmes was tried before a jury in Chemung County Court (Buckley, J.). The proof at trial established that on October 17, Deputies Donahue ("Donahue") and Argetsinger ("Argetsinger") and Lieutenant Decker ("Decker") of the City of Elmira Police Department were investigating a robbery that had occurred earlier that day on the south side of the city. Upon learning that the robbery suspect had taken a cab to the Arnot Mall, the officers drove to the mall where they were informed by security guard Giles that an individual matching the suspect's description was in the customer service area of Kaufmann's department store. Donahue, Argetsinger, Decker, and Giles fanned out in pursuit of the suspect.

Donahue was the first to encounter the suspect, who was later identified as Holmes. Donahue ordered him to halt and place his hands above his head. In response, Holmes turned to face Donahue, raised his hands to shoulder-level, squatted down into a semi-crouch, and darted off. As Donahue pursued Holmes down an aisle, he observed Holmes grab at the waistband of his pants with his left hand at least two or three times and finally remove a semi-automatic handgun. Donahue saw Holmes extend his left arm straight out at a forty-five-degree angle and continue to run away from Donahue

Meanwhile, Giles was standing at the far end of the same aisle down which Holmes was running. When the unarmed Giles observed Holmes running at him with a gun, Giles crouched down in an attempt to get away from Holmes. However, Holmes continued to run at Giles while pointing the gun at Giles's head. As Holmes came alongside Giles, Holmes fired the gun at Giles at point-blank range. Giles fell to the floor as a bullet creased his forehead and entered his right thigh.

Apparently, Holmes's gun fell apart after he fired it; the slide, the pistol sight, and two springs from a .22 caliber pistol later were recovered in the vicinity of the shooting. As he fled from Donahue, Holmes pointed the remains of the gun at Argetsinger who fired a shot at him. Holmes, however, was able to elude the police and contact some friends—Antoinette Collier ("Collier"), Eboni Cooke ("Cooke"), and April Fullwood ("Fullwood")—who agreed to come pick him up at the mall. When they arrived at the

mall, Holmes jumped out from behind some bushes and hopped into the car. Collier recounted that Holmes informed them that he "shot a security guard officer at the mall ... [b]ecause he had robbed somebody earlier." T.143.[1] Cooke provided similar testimony. T.159. Fullwood testified that she heard Holmes say that he shot a security guard, but she did not hear him give a reason for the shooting. T.185–91. The witnesses stated that they were told by the police that they could be charged as "accessories to murder."

Holmes did not testify in his own behalf at trial. The defense theory was that Holmes fired a downward shot at a forty-five-degree angle at Giles because he believed that Giles was about to lunge at him. Counsel argued that the superficiality of the head wound showed that Holmes did not have the requisite intent to kill to support an attempted murder conviction. The defense did not dispute that Giles received gun-powder marks on his forehead.

The trial court instructed the jury on attempted second degree assault and third degree assault as lesser included offenses. The jury returned a verdict convicting Holmes of both counts of the indictment. Holmes was sentenced to twelve and one-half to twenty-five years on the charge of attempted murder and seven and one-half to fifteen years on the weapons charge, both sentences to run concurrently.

Through new counsel, Holmes appealed his conviction. The Appellate Division, Third Department, of New York State Supreme Court unanimously affirmed the conviction on April 29, 1999. *People v. Holmes*, 260 A.D.2d 942, 690 N.Y.S.2d 292 (3d Dep't 1999). The New York Court of Appeals denied leave to appeal on August 30, 1999. *People v. Holmes*, 93 N.Y.2d 1020, 697 N.Y.S.2d 578, 719 N.E.2d 939

(1999). Holmes attacked the effectiveness of his appellate counsel by means of an application for a writ of error *coram nobis* which was denied by the Appellate Division on September 21, 2000. Holmes also moved to vacate the judgment of conviction via a motion pursuant to Section 440.10 of the New York Criminal Procedure Law; this application was denied by the trial court on May 17, 2002.

Holmes filed a habeas petition in this Court on October 30, 2000, in which he raised several claims all premised upon his appellate counsel's alleged ineffectiveness. *See* Petition at 5 (Docket # 1). After obtaining a stay of the petition in order to exhaust certain claims in state court, Holmes submitted a pleading in which he asked that his petition be amended to include claims from his State court appellate brief. *See* Docket # 16. Based upon a review of Holmes's papers, the Court concludes that Holmes has raised the following grounds for habeas relief: (1) the evidence was insufficient to prove intent to kill; (2) the conviction was against the weight of the evidence; (3) the trial court erroneously failed to conduct a *Ventimiglia* hearing; (4) the sentence is harsh and excessive; (5) the prosecutor's failure to turn over the ballistics analysis report deprived defendant of a fair trial; and (6) appellate counsel was ineffective. Respondent concedes that Holmes has exhausted all of his claims, and the Court finds that the claims are properly before it on habeas review. *See* 28 U.S.C. § 2254(b)(1).

## DISCUSSION

### Standard of Review

Because the filing of this petition postdates the enactment of the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), AEDPA's revisions of 28 U.S.C. § 2254 govern this proceeding.

---

**1.** Citations to "T.___" refer to the transcript of Holmes's trial.

*See Williams v. Taylor,* 529 U.S. 362, 402, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). When Congress enacted AEDPA, it "significantly curtailed the power of federal courts to grant the habeas petitions of state prisoners." *Lainfiesta v. Artuz,* 253 F.3d 151, 155 (2d Cir.2001) (citing *Williams,* 529 U.S. at 399, 120 S.Ct. 1495). A Federal court may not grant a habeas petition on a claim that was adjudicated on the merits in State court unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1), (2).

■ A State court decision is "contrary to" established Federal law if the State court either "applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams,* 529 U.S. at 405–06, 120 S.Ct. 1495. A State court decision is an "unreasonable application" of Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular case." *Id.* at 407–08, 120 S.Ct. 1495.

## Merits of the Petition

### 1. Insufficiency of the evidence

■ Holmes claims that the evidence of intent to commit murder was legally

insufficient to support the conviction.[2] He contends that the evidence of intent was circumstantial and that it was "equally possible that there was no intent to kill." On direct appeal, the Appellate Division disagreed: "It has repeatedly been held that evidence that a person 'fired a shot at close range into [another's] head [is] sufficient to support the inference that [the person] intended to kill the victim.'" *People v. Holmes,* 260 A.D.2d at 943, 690 N.Y.S.2d 292 (citations omitted; alteration in original).

■ On Federal habeas review, the Court's task is narrowly circumscribed: it is limited to determining whether, after viewing the evidence in the light most favorable to the prosecution, "*any* rational trier of fact" could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original); *accord Dixon v. Miller,* 293 F.3d 74, 81 (2d Cir.2002). Thus, a habeas petitioner "bears a very heavy burden" when challenging the legal sufficiency of the evidence in a state criminal conviction. *Einaugler v. Supreme Court,* 109 F.3d 836, 840 (2d Cir.1997). On habeas review, the court is not permitted to "'make its own subjective determination of guilt or innocence.'" *Quartararo v. Hanslmaier,* 186 F.3d 91, 97 (2d Cir.1999) (quoting *Herrera v. Collins,* 506 U.S. 390, 402, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993)). The court's "inquiry does not focus on

**2.** Holmes also contends that the verdict was against the weight of the evidence. However, challenges to the weight of the evidence supporting a conviction, unlike challenges to the sufficiency of the evidence, are not cognizable on Federal habeas review. *Maldonado v. Scully,* 86 F.3d 32, 35 (2d Cir.1996). In contrast to the intermediate appellate courts in New York State, the Federal courts may not

independently "weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony." *People v. Bleakley,* 69 N.Y.2d 490, 495, 515 N.Y.S.2d 761, 508 N.E.2d 672 (1987). Accordingly, Holmes's weight-of-the-evidence claim is dismissed.

whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins,* 506 U.S. at 402, 113 S.Ct. 853 (emphasis in original).

■ The habeas petitioner must "rebut ... the presumption that all factual determinations made by the state court were correct." *Ponnapula v. Spitzer,* 297 F.3d 172, 176 (2d Cir.2002); *see also* 28 U.S.C. § 2254(e)(1). In making this assessment, the reviewing court may not "disturb the jury's findings with respect to the witnesses' credibility." *United States v. Roman,* 870 F.2d 65, 71 (2d Cir.1989). Thus, under this rigorous standard, a Federal habeas court " 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record— that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.' " *Wheel v. Robinson,* 34 F.3d 60, 66 (2d Cir.1994) (quoting *Jackson,* 443 U.S. at 326, 99 S.Ct. 2781).

■ In reviewing Holmes's claim of legal insufficiency, this Court's sole responsibility is to determine whether a rational fact-finder, based upon the circumstances of the shooting, could reasonably have inferred that Holmes possessed the intent to kill. Giles, the victim, testified that he watched Holmes run toward him with the gun pointed at his head. T.97–101. Giles testified that he was crouching down trying to get out of Holmes's way. When Holmes was at nearly point-blank range, he fired the gun, the bullet grazing Giles's forehead at a downward angle and entering his thigh. The defense did not dispute that Giles sustained a laceration to his forehead and that a "black powdery substance," T.120, was found around the wound site. Both State and Federal courts have held that a jury logically may infer intent to kill based on the fact that the defendant fired a gun at close range into another's head. *See, e.g., Leslie v. Artuz,* 72 F.Supp.2d 267, 277 (S.D.N.Y. 1999) (denying claim that evidence was insufficient to support conviction for attempted murder where prosecution offered evidence that petitioner pointed a loaded firearm at victim's head, and that the victim heard a loud, metallic "click," but neither of the two experts at trial could say that the impression in the cartridge's primer was due to a frustrated effort by petitioner to shoot the victim; "It is certainly not beyond reason that a rational jury could conclude from such evidence that the "click" Negus [the victim] heard was attributable to Leslie's [the petitioner's] attempted firing of the gun, and that Leslie intended to shoot Negus in the head."); *People v. Lawrence,* 186 A.D.2d 1016, 1017, 588 N.Y.S.2d 471 (4th Dept. 1992), *appeal denied,* 81 N.Y.2d 790, 594 N.Y.S.2d 737, 610 N.E.2d 410 (1993). Moreover, actual injury is not a prerequisite to a conviction on a charge of attempted murder.

Viewing the evidence in the light most favorable to the prosecution and drawing all permissible inferences in its favor, the Court cannot say that the jury was irrational in concluding that the Holmes had the intent necessary to support his conviction on the attempted murder charge. Thus, the Court must find that Holmes's insufficient evidence claim lacks merit.

### 2. Ineffective assistance of appellate counsel

Holmes claims that his appellate counsel was ineffective for failing to argue that trial counsel provided deficient representation at trial. Holmes faults trial counsel for failing to have the court redact the portions of certain medical records refer-

ring to the robbery that occurred prior to the shooting at the mall; failing to call an expert witness to establish that the cut on the victim's forehead was not caused by a gunshot; and failing to request that the court charge additional lesser included offenses.

### a. Legal standard

In order to succeed on a claim of ineffective assistance of counsel within the framework established by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) (*"Strickland"*), a habeas petitioner must satisfy a two-part test. First, he must show that his attorney's performance "fell below an objective standard of reasonableness," *id.* at 688, 104 S.Ct. 2052, and second, he must show that there is a "reasonable probability" that but for counsel's error, the outcome would have been different, *id.* at 694, 104 S.Ct. 2052.

 Although the *Strickland* test was formulated in the context of evaluating the effectiveness of trial counsel, the same standard applies to claims regarding the performance of appellate counsel. *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (citing, *e.g.*, *Claudio v. Scully*, 982 F.2d 798, 803 (2d Cir.1992)). Appellate counsel need not present every non-frivolous argument that could be made on petitioner's behalf. *Mayo*, 13 F.3d at 533; *see also Evitts v. Lucey*, 469 U.S. 387, 394, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985) (emphasizing that appellate counsel "need not advance every argument, regardless of merit, urged by the appellant"). Moreover, reviewing courts should not employ hindsight to second-guess an appellate attorney's strategic choices. *Mayo*, 13 F.3d at 533; *see also Jones v. Barnes*, 463 U.S. 745, 754, 103 S.Ct. 3308, 77 L.Ed.2d 987 (1983) ("For judges to second-guess reasonable professional judgments and im-

pose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the [ ] goal of vigorous and effective advocacy[.]"). However, a habeas petitioner may establish constitutionally inadequate performance if he shows that his appellate counsel omitted material and obvious issues while pursuing arguments that were patently and significantly weaker. *Mayo*, 13 F.3d at 533.

### b. The arguments that appellate counsel failed to raise

#### i. Failure to redact references to uncharged robbery

 Holmes complains that certain medical records concerning Giles, the victim, were prejudicial because they stated that the victim sought treatment after being injured by an individual who was a suspect in an armed robbery. Holmes does not claim that the medical records mentioned him by name, however. Holmes argues that trial counsel should have requested that any references to the earlier robbery be redacted.

A similar issue was presented by the testimony of Antoinette Collier. *See* this opn. *infra* at Pt. 3. The prosecutor sought to be able to elicit from Collier that Holmes told her that he had been involved in a robbery which the police were investigating. Defense counsel cogently argued that such testimony's prejudicial effect outweighed its probative value and should not be admitted. Since this application was denied by the trial court and the proof allowed to go before the jury, there is no possible way that Holmes's proposed argument regarding the redaction of the same information from the medical records would have been successful. Therefore, trial counsel was not deficient in failing to argue specifically for redaction of the medical records, and appellate counsel was not

ineffective in failing to challenge trial counsel's performance on this basis.

### ii. Failure to present medical evidence

■■■ Holmes contends that trial counsel should have retained an expert witness to testify that the lacerations to the victim's forehead were not caused by a gunshot. He complains that appellate counsel should have argued that trial counsel was ineffective on this basis.

At the outset, I note that there was no guarantee that Holmes would have been able to retain an expert witness who would have testified that the forehead wound could *not* have been caused by a gunshot. Moreover, Holmes has offered no other plausible explanation for the wounds to the victim's forehead or the presence of a black, powdery substance near the wounds. Under New York Law, the crime of attempted murder "does not require actual physical injury to a victim at all." *People v. Fernandez*, 88 N.Y.2d 777, 783, 650 N.Y.S.2d 625, 673 N.E.2d 910 (1996) (citing N.Y. Penal Law § 110.00; 125.25(1)). Thus, as long as the jury believed Giles's testimony that Holmes aimed the gun towards his head, it could have convicted Holmes of attempted murder even if the victim suffered no injury. Because this claim would not have succeeded on direct appeal, Holmes similarly was not prejudiced by appellate counsel's failure to raise it.

I have reviewed the appellate brief which reveals that counsel properly attempted to use to Holmes's advantage the medical report describing the head wound as "remarkable for the presence of two small transverse lacerations about the left side of the forehead, the largest measur[ing] 1—1½ cm. in length." Appellate counsel argued that the fact that the forehead laceration merely was superficial raised "a reasonable doubt as to whether the defendant meant to do anything other than wound Giles[.]" Counsel asserted that it was "hard to believe that if [defendant] had intended to kill Giles, at that close distance, that he would not have shot directly into Giles' head." Appellant's Brief on Direct Appeal at 3. Appellate counsel made the most convincing argument that could be made under the circumstances. Simply because it was unsuccessful does not establish incompetence on his part.

### iii. Failure to request additional lesser included offenses

■■■ At two separate points in the brief, appellate counsel noted that trial counsel failed to request that the court give jury charges on attempted manslaughter in the first and second degrees and attempted criminally negligent homicide as lesser included offenses of attempted murder. This, in appellate counsel's opinion, was error, but not error of constitutional magnitude in light of counsel's overall performance. However, none of these proposed charges are lesser included offenses of attempted murder, nor are they actual crimes under the Penal Law. A person is guilty of an attempt to commit a crime only when he intends to commit that crime. N.Y. Penal Law § 110.00. There must be a specific intent to commit a specific crime. *People v. Bracey*, 41 N.Y.2d 296, 300, 392 N.Y.S.2d 412, 360 N.E.2d 1094 (1977). Attempted manslaughter in the first degree is a nonexistent crime since no intent is required for the crime of manslaughter, but an attempt to commit a crime requires the *intent* to commit the crime. *See People v. Martinez*, 81 N.Y.2d 810, 811–12, 595 N.Y.S.2d 376, 611 N.E.2d 277 (1993) (finding that it was fundamental error to instruct jury on attempted manslaughter in first degree as lesser included charge of attempted murder in the second degree) (citing *People v. Campbell*, 72 N.Y.2d 602, 605, 535 N.Y.S.2d 580, 532

N.E.2d 86 (1988); *People v. Foster*, 19 N.Y.2d 150, 153, 278 N.Y.S.2d 603, 225 N.E.2d 200 (1967)); *see also People v. McDavis*, 97 A.D.2d 302, 303–04, 469 N.Y.S.2d 508 (4th Dept.1983). Likewise, "there can be no attempt to commit a crime that does not involve a specific intent, such as manslaughter in the second degree, a crime predicated upon a reckless act." *McDavis*, 97 A.D.2d at 303–04, 469 N.Y.S.2d 508 (citations omitted). Finally, it is axiomatic that one cannot attempt to commit an act of negligence.

Trial counsel properly requested that the court give jury charges on attempted second degree assault and third degree assault as lesser included offenses of attempted second degree murder. Since the proposed lesser included offenses were not proper lesser included offenses of attempted second degree murder, there was no basis upon which appellate counsel could have argued that trial counsel was ineffective for failing to request them.

### 3. Failure to conduct full Ventimiglia hearing and erroneous introduction of evidence of uncharged crimes

Holmes contends that the trial court erroneously refused to hold a *Ventimiglia* [3] hearing, despite defense counsel's request, to determine the admissibility of evidence that Holmes told his friend, Antoinette Collier, that he had robbed someone earlier in the day, that the police were pursuing him, and that he shot a security guard because the guard was trying to stop him. *See* T.12. The prosecution explained that the evidence would come in through the testimony of Collier, the friend who picked Holmes up at the mall. Defense counsel argued that he was entitled to cross-examine Collier about Holmes's statement to her. He also contended that the statement had very little probative value and, in any event, was cumulative since the defense was stipulating to the admission of testimony by the police that Holmes was a suspect in a robbery. *See* T.11–14. The trial court ruled that a formal *Ventimiglia* hearing was unnecessary because the proposed testimony by Collier recounted a statement by Holmes against his penal interest, and that the statement was "relevant and admissible evidence bearing on the issue of motive[.]" T.16; *see generally* T.15–18.

In New York criminal practice, a *Ventimiglia* application concerns the admissibility of evidence of prior conduct, other than direct proof of a defendant's prior crime, which tends to implicate the defendant in the commission of the crime. *People v. Ventimiglia*, 52 N.Y.2d at 361, 438 N.Y.S.2d 261, 420 N.E.2d 59 (defendants charged with murder admitted to a witness that they had a location for disposing of the body). The right to a *Ventimiglia* hearing does not derive from the Federal constitution and is solely a matter of State law. *See, e.g., Pena v. Fischer*, 2003 WL 1990331, at *10 (S.D.N.Y. Apr.30, 2003) (citing *Jones v. Artuz*, 2002 WL 31006171, at *9 (E.D.N.Y. Aug. 30, 2002)). In general, errors of State law are not cognizable on habeas review. *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 67, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *Engle v. Isaac*, 456 U.S. 107, 119, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). Nevertheless, due process requires the State courts, in conducting criminal trials, to proceed consistently with "that fundamental fairness" which is "essential to the very concept of justice." *Lisenba v. California*, 314 U.S. 219, 236, 62 S.Ct. 280, 86 L.Ed. 166 (1941); *accord, e.g., Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir.1998). "The introduction

---

**3.** *People v. Ventimiglia,* 52 N.Y.2d 350, 361, 438 N.Y.S.2d 261, 420 N.E.2d 59 (1981).

of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.' " *Dunnigan*, 137 F.3d at 125 (quoting *Dowling v. United States*, 493 U.S. 342, 352, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990)) (internal quotation marks omitted).

■ Turning first to Holmes's claim that the trial court failed to conduct a proper *Ventimiglia* hearing, I note that this is a question of State law and therefore is not cognizable on habeas review. In any event, there does not appear to have been error under State law; I have found no precedent holding that a formal hearing at which the prosecution adduces live testimony is required under *Ventimiglia*. What is required is for the prosecution to alert the court and the defendant of the "prior crime" evidence intended to be introduced on the case-in-chief and identify some issue, other than mere criminal propensity, to which the evidence is relevant. *See, e.g., People v. Lewis*, 69 N.Y.2d 321, 325, 514 N.Y.S.2d 205, 506 N.E.2d 915 (1987). Here, defense counsel was apprised of the prior crime evidence which the prosecution intended to offer, and the prosecution articulated a reason for its introduction. Defense counsel had the opportunity to argue why the evidence should not be admitted. Thus, the procedure followed by the court in Holmes's case appears to have been facially adequate under State law.

■ As to Holmes's claim that the evidence of the robbery committed earlier in the day was unfairly prejudicial, I cannot find that habeas relief is warranted on the basis of its introduction. The trial court held that the earlier robbery provided background evidence necessary to complete the narrative of events and provided a context for the police officers' attempt to detain Holmes in the first place. Such use of of prior crimes evidence is proper under both Federal and State law. *See, e.g., United States v. Carboni*, 204 F.3d 39, 44 (2d Cir.2000) ("[E]vidence of uncharged criminal activity ·is not considered other crimes evidence under Fed.R.Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial.") (quotations omitted); *People v. Till*, 87 N.Y.2d 835, 837, 637 N.Y.S.2d 681, 661 N.E.2d 153 (1995) (finding that prior uncharged crimes evidence "may be allowed when, as here, it bears on the motive and state of mind in relation to an avoidance of apprehension during immediate flight from a crime and is found to be 'needed as background material' or to 'complete the narrative of the episode' ") (citations omitted). Thus, Holmes has failed to establish a violation of State evidentiary law, let alone an error of Federal constitutional magnitude. For this reason, the claim affords no basis for habeas relief.

### 4. Failure to disclose ballistics report

■ Holmes claims the prosecution failed to disclose the results of the complete ballistics examination performed on the .22 caliber gun, thereby violating its duty to provide material evidence having impeachment or exculpatory value. *See, e.g., Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Strickler v. Greene*, 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). By means of a request pursuant to New York State's Freedom of Information Law, Holmes obtained a letter from Investigator Schrom to the New York State Police Crime Laboratory requesting that the lab

perform a number of examinations on the remnants of the gun found at the crime scene. In particular, Holmes contends that the prosecution failed to produce results from the second and third examinations requested, that is, whether the gun had any abnormalities that might cause it to misfire and whether there were any distinctive markings by which one could match the gun to the spent .22 caliber shell found at the scene. Holmes asserts that "Examinations 2 and 3 held great significance[,]"*see* "Amended Petition Reply" at Point 4 (Docket # 20), but he does not elaborate further.

Respondent points out that Holmes unsuccessfully argued this issue in his motion to vacate the judgment. At that time, defense counsel submitted an affidavit stating that the ballistics report had been turned over to him during trial. *See* Affidavit attaching copy of ballistics report, A.79–82.[4] The trial court held that the evidence appeared to have been disclosed and that, in any event, it was not exculpatory in nature. *See* County Court order, A.78. The court found that the report, which indicated that the reassembled weapon was capable of firing, was "consistent with the testimony that defendant fired the weapon and discharged, at point blank range, a live round" at the victim. *Id.*

I note that the ballistics report that defense counsel admitted to receiving appears to set forth the test results claimed by Holmes to have been withheld. Of note is the report's failure to mention the presence of any abnormalities that could have caused the gun to misfire. To the contrary, the report states that the gun was "fully functional." A.82. Furthermore, testing revealed that the spent shell was consistent with having been discharged from the reassembled pistol. *See* A.81–82. I fail to see how these test results could be deemed exculpatory.

In sum, in light of the affidavit submitted by defense counsel, Holmes cannot demonstrate a withholding of evidence. Moreover, Holmes cannot establish that the allegedly withheld evidence had exculpatory value, let alone *that it* was material to his conviction. Because Holmes has failed set forth any of the elements of a viable *Brady* claim, habeas relief is unwarranted on this basis.

### 5. Harsh and excessive sentence

 Holmes contends that his sentence was harsh and excessive given his young age (twenty-one years) and, in his opinion, lack of a lengthy criminal record. A petitioner's assertion that a sentencing judge abused his discretion in sentencing is generally not a Federal claim subject to review by a habeas court. *See Fielding v. LeFevre,* 548 F.2d 1102, 1109 (2d Cir.1977) (citing *Townsend v. Burke,* 334 U.S. 736, 741, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948)). A challenge to the term of a sentence does not present a cognizable constitutional issue if the sentence falls within the statutory range. *White v. Keane,* 969 F.2d 1381, 1383 (2d Cir.1992); *accord Ross v. Gavin,* 101 F.3d 687 (2d Cir.1996) (unpublished opinion). Because Holmes's term of imprisonment falls within the statutory range, his sentencing claim is not cognizable on habeas review.

### CONCLUSION

For the reasons stated above, Anthony Holmes's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is

---

4. Citations to "A.___" refer to the Appendix of Exhibits annexed to respondent's Memorandum of Law (Docket # 28).

denied, and the petition is dismissed. Because Holmes has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253.

**IT IS SO ORDERED**