(August 25, 2005)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v THOMAS DE VITO, Appellant. [800 NYS2d 250]—

Peters, J. Appeal from a judgment of the County Court of Montgomery County (Catena, J.), rendered April 7, 2003, upon a verdict convicting defendant of the crimes of course of sexual conduct against a child in the first degree (two counts) and endangering the welfare of a child (two counts).

Defendant operated a daycare center in his home until May 2002, when one of the children disclosed that he had been abused by defendant. Upon being interviewed by authorities, the boy who disclosed the abuse revealed that a second boy had also been abused by defendant; the second victim confirmed this information when questioned by the police. Thereafter, two police officers went to defendant's residence and requested that he accompany them to the police station. While in police headquarters, defendant signed a *Miranda* waiver and confessed to having had "sexual contact" with the two children during 1995—described by him as a "time in my life when there was turmoil with my marriage and I was unhappy with my life." Defendant specifically admitted sexual contact on more than one occasion with both victims. In September 2002, defendant was charged with two counts each of the crimes of course of sexual conduct against a child in the first degree and endangering the welfare of a child. While defendant's statement admitted to acts occurring in 1995, the indictment alleged that the sexual abuse took place in 1997 and 1998. Prior to trial, defendant moved to suppress his statement to the police by asserting, among other things, that (1) the statement was involuntary, (2) it could not be used as a confession because of the date discrepancy, and (3) it was inadmissible as evidence of an uncharged prior crime under *Ventimiglia* and *Molineux*. The People responded by arguing that defendant's reference to 1995 in his statement represented either a conscious deception, presumably to benefit from the expiration of the then-applicable statute of limitations,

or a mistake. In either case, the People sought to have the statement deemed admissible as a confession to the crimes charged. In the alternative, the People argued that defendant's statement was admissible under *Ventimiglia* and *Molineux* to prove that defendant had the opportunity to commit these acts in the manner described by the young victims.

Seeking to resolve these issues, County Court first held a *Huntley* hearing, after which it determined that defendant's statement was given voluntarily. In an attempt to determine whether the statement was admissible as either a confession or evidence of uncharged crimes and/or acts, the court also held a *Ventimiglia/Molineux* hearing. As a result of this second hearing, at which not a single witness was called to testify, County Court ruled that defendant's statement could be used on the People's direct case because it was a confession to the charged crimes, thereby deeming the date discrepancy "inconsequential."

At trial, defendant's statement was read into evidence. After its admission, County Court instructed the jury that it was for the jury to decide whether defendant's statement constituted a confession to the charged crimes and, if so, to consider the statement as direct evidence of defendant's guilt. The court further instructed the jury that if it determined that defendant's statement constituted an admission to uncharged crimes and/or acts, then it could consider the admission for the sole purpose of "opportunity and/or feasibility," but not as proof that defendant "possesses any propensity" to commit the crimes alleged in the indictment. Defendant was ultimately convicted on all counts and subsequently sentenced to an aggregate 50-year prison term. He appeals.

The admissibility of a defendant's statement poses a question of law for the trial court to determine after conducting a hearing (*see People v Christie*, 241 AD2d 699, 700 [1997], *lv denied* 90 NY2d 938 [1997]). Thus, County Court properly found that defendant's statement was voluntarily given after conducting a thorough *Huntley* hearing. The court erred, however, by allowing *the jury* to make the threshold determination of whether defendant's voluntary statement constituted either a confession or an admission to uncharged prior crimes (*see id.* at 700). Moreover, although the court allowed counsel to present oral argument on whether defendant's voluntary statement constituted a confession, the court's determination that "[defendant] intended to confess to the [indicted] crimes" was unsupported because defendant's motion required a hearing at which evidence and testimony would be taken with respect to the dates

on which these crimes allegedly occurred. Had the People presented sufficient evidence at the *Ventimiglia/Molineux* hearing indicating that the crimes occurred only in 1997 and 1998, and not in 1995, the statement could have been found admissible, as a matter of law, as a confession to the charged crimes. Because the court did not hold an evidentiary hearing, defendant's conviction must be reversed and the matter remitted to County Court for a new trial.

Upon remittal, if County Court determines that defendant's statement did not constitute an admission to the charged crimes, but rather constituted only an admission to prior uncharged acts that occurred in 1995, the statement could potentially be admitted at trial, albeit under limited circumstances. Undoubtedly, evidence of similar uncharged crimes is not admissible to prove a defendant's propensity to commit the specific crimes charged (*see People v Hudy,* 73 NY2d 40, 55 [1988]; *People v Lewis,* 69 NY2d 321, 325 [1987]; *People v Molineux,* 168 NY 264 [1901]). Such evidence is admissible, however, if it is probative of a legally relevant and material issue before the court and its probative value exceeds the potential for prejudice resulting to the defendant (*see People v Higgins,* 12 AD3d 775, 777 [2004], *lv denied* 4 NY3d 764 [2005]). Thus, while defendant's admission to 1995 acts of sexual abuse may not be used as substantive proof of defendant's guilt of the charged crimes (*see People v Hudy, supra* at 55; *People v Lewis, supra* at 325; *People v Molineux, supra*), it could potentially be used to rebut defendant's theory, should he again present it, that he is innocent for lack of opportunity or feasibility (*see People v Rojas,* 97 NY2d 32, 38-39 [2001]). Prior to the statement's admission, however, the trial court must carefully balance, outside the presence of the jury (*see People v Fleegle,* 295 AD2d 760, 762 [2002]), the admission's probative value and the resulting unfair prejudice. When balancing probative value and unfair prejudice, the court may consider, among other things, the fact that the uncharged conduct concerned the same victims (*cf. People v Vargas,* 88 NY2d 856 [1996]; *People v Hudy, supra* at 55-56), that it was defendant's own admission and not the victim bolstering his own testimony (*see People v Tice,* 147 AD2d 776, 777-778 [1989], *lv denied* 74 NY2d 748 [1989]; *cf. People v Lewis, supra* at 328), and the extent to which defendant has disputed the feasibility and/or opportunity to commit the crimes charged (*see People v Biondo,* 41 NY2d 483, 486 [1977], *cert denied* 434 US 928 [1977]). Upon remittal, such a ruling must be made by the trial court after a plenary hearing.

We also find merit to defendant's claim that the prosecutor's

egregious misconduct deprived him of his due process right to a fair trial. To determine whether a reversal is warranted on this ground, we must assess "the severity and frequency of the conduct, whether the trial court took appropriate action to dilute the effect of the conduct and whether, from a review of the evidence, it can be said that the result would have been the same absent such conduct" (*People v Tarantola*, 178 AD2d 768, 770 [1991], *lv denied* 79 NY2d 954 [1992]). While defense counsel did raise the issue of defendant's homosexuality during jury selection in an attempt to ensure an impartial venire, he did not open the door to the degree of exploitation and denigration undertaken by the prosecutor during trial. Examples of the prosecutor's malevolence and impropriety abound on cross-examination and, most notably, during summation. During defendant's cross-examination, the prosecutor improperly probed defendant's sexual conduct with his past and present homosexual partners, clearly attempting to divert the jury's attention away from the evidence relating to the charged crimes. While questions concerning the content of photographs contained on defendant's computer were relevant to impeach defendant's direct testimony regarding how and when his wife learned of his homosexuality, we find that the prosecutor's prolonged inquiry was excessive and highly inflammatory. On summation, the prosecutor impermissibly attempted to utilize defendant's homosexuality as evidence of the crimes charged by referring to the trial as a case of "De Vito's libido." Another egregious violation occurred when the prosecutor refuted defendant's suggestion on summation that this was a witch hunt by remarking, "[Defendant's] not a witch. He's Joe's bitch," in reference to defendant's domestic partner. Other improper remarks included reference to a particular pornographic movie and a comparison between certain defense witnesses and celebrities based on their similar names and physical appearances.

The prosecutor's remarks were highly prejudicial, did little to impeach defendant's testimony or credibility, were irrelevant to the crimes charged, appealed to the fears and prejudices of the jury (*see People v Russell*, 307 AD2d 385, 386 [2003]) and were designed to sidetrack the issue away from defendant's guilt or innocence (*see People v Calabria*, 94 NY2d 519, 523 [2000]; *People v Alicea*, 37 NY2d 601, 605 [1975]; *People v Gorghan*, 13 AD3d 908 [2004], *appeal dismissed* 4 NY3d 798 [2005]). They had no place in this trial. Although County Court properly sustained objections when raised, the court's curative instructions were insufficient to overcome the extreme prejudice that resulted from the prosecutorial misconduct. In addition, while

the court properly permitted inquiry into defendant's sexual activity allegedly occurring during the children's nap time, since both victims testified that their abuse took place during that period and defendant denied any such opportunity, such inquiries should have been limited and brief. Moreover, the prosecutor should not have been permitted to repeatedly imply—without any good faith basis—that defendant had sexual contact with every man that entered into the daycare center. Finally, given the foregoing and that defendant's statement was improperly admitted under the circumstances, we cannot say that the result would have been the same even absent the misconduct (*see People v Calabria*, 94 NY2d 519, 523 [2000]; *People v Levandowski*, 8 AD3d 898, 900-901 [2004]).

Mercure, J.P., Spain and Rose, JJ., concur. Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Montgomery County for a new trial.